## WILLIAM B. TREMAINE, Appellant, v. WILLIAM Y. MORTIMER et al., Respondents.

The provisions of the act in reference to chattel mortgages (Chap. 279, Laws of 1833, as amended by chap. 418, Laws of 1879), declaring such a mortgage absolutely void as to creditors of the mortgagor unless filed and refiled as prescribed, confers no title to the mortgaged property upon the creditors and they take no interest by virtue of the act; its effect is simply that in the cases mentioned, as between the creditors and the mortgagor, the mortgage has no force and is to be treated as if it had never existed.

The mortgagor as well as the creditors can make this claim, and before the creditors acquire liens upon the property by virtue of executions or other process, the mortgagor may sell or assign and convey an absolute title, or he may deliver the property to the mortgagee in payment of his debt.

A creditor may not, therefore, seize the property under an execution in his favor and at the same time deny that the mortgagor has any title.

After default in payment of a debt secured by a chattel mortgage and even after the mortgagee has taken possession, the mortgagor has a beneficial interest in the mortgaged property which he can convey.

S. executed two chattel mortgages on certain property, which were properly filed, but were not refiled as prescribed by the statute. After the expiration of the time for refiling, default having been made in payment, one of the mortgagees took possession of the property. Thereafter S. executed a general assignment for the benefit of creditors. Upon judgments subsequently recovered against S. executions were issued, under which the mortgaged property was advertised and sold. In an action by the purchaser to recover damages for the alleged conversion, of the property in which the validity of the assignment was in

no way assailed *held,* that whatever interest S. had became vested in the assignee under the assignment; that plaintiffs acquired no title or interest by their purchase ; and, so that the complaint was properly dismissed. *Porter* v. *Parmley* (52 N. Y. 185), distinguished.

(Argued April 30, 1891 ; decided June 2, 1891.)

APPEAL from judgment of the General Term of the Superior Court of the city of New York, entered upon an order made December 10, 1890, which affirmed a judgment in favor of defendant, entered upon an order vacating a verdict in favor of plaintiff and directed a dismissal of the complaint on the merits.

Upon the trial the court directed a verdict in favor of plaintiff upon consent of the parties, reserving the right to set aside the verdict and to dismiss the complaint upon a motion to be made for that purpose, which was made and granted.

This action was brought to recover damages for the conversion of certain personal property described in the complaint.

The answer put in issue the plaintiff's title and alleged certain facts upon which it is claimed title to the property was vested in the defendant. Upon the trial of the action the following facts appeared : N. P. Sewell, being the owner of the property, executed two chattel mortgages thereon on the 2d of November, 1885, one to the defendants and another to C. L. Chase, and both were filed in the register's office of the city of New York on the same day. The mortgage to Chase was refiled on the 8th day of April, 1887. The other mortgage was never refiled. Chase took possession of the property under his mortgage on the 12th day of December, 1887, default having been made in the conditions thereof, and on the following day Sewell made a general assignment for the benefit of his creditors. Subsequently to the general assignment, five judgments were recovered against him, upon which executions were issued on the 20th, 27th and 30th days of December, 1887, and the 5th day of January, 1888. On the 28th day of December, 1887, in an action of replevin brought by these defendants against Chase, Sewell and Sewell's assignee,

after default made in the payment of the amount secured by the mortgages of Sewell to the defendants, the sheriff replevied the property, and on January 11, 1888, delivered the same to these defendants. Thereafter Chase assigned his mortgage to the defendants, and the replevin action was discontinued as to him. The defendants retained possession of the property so delivered to them by the sheriff until February 17, 1888, on which day they sold the same at auction, after due notice, and applied the proceeds to the payment of the amount due them upon the two mortgages. The action of replevin resulted in a judgment for the possession of the property, on the 6th day of April, 1888, in favor of the plaintiffs therein, and against the defendants therein excepting Chase. On the 9th day of January, 1888, under and by virtue of the executions above mentioned, the sheriff advertised and sold all the property covered by the two mortgages, to the plaintiff in this action. The plaintiff's complaint was dismissed at the trial term.

*Herbert T. Ketcham* for appellant. Both mortgages under which the defendants resist the claims of creditors ceased to be valid as against creditors by the failure to refile them within thirty days of the expiration of the year from the original filing. (Laws of 1833, chap. 279, § 8; *Porter* v. *Parmley,* 52 N. Y. 185; *Marsden* v. *Cornell,* 2 Hun, 449; 62 N. Y. 215; *Cooper* v. *Koppes,* 13 West. Rep. 465; Thomas on Mort. 500.) No possession taken by Chase or the defendants could save either mortgage. (*Parshall* v. *Eggart,* 52 Barb. 367; *Keller* v. *Paine,* 107 N. Y. 83; *C. P., etc., Co.* v. *Damon,* 48 Hun, 409.) Expressions may be cited to the effect that "liens without change of possession are good if followed by delivery of possession before the rights of third persons have intervened." This dogma, wherever found, is consistent with the assumption that the possession must be delivered and that creditors are excluded only by a voluntary surrender outside of the requirement of the mortgage. (Jones on Chat. Mort. 178; *Petring* v. *H. D. G. Co.,* 8 West. Rep. 221; *Hauselt* v. *Harrison,* 105 U.

S. 401; *Q., etc., Co.* v. *Hart,* 48 Hun, 393.) The right of cred-
itors was not destroyed by the debtor's act in making a general
assignment. (*Southard* v. *Benner,* 72 N. Y. 424; *Spring* v.
*Short,* 90 id. 538; Laws of 1858, chap. 314; *Van Heusen* v.
*Radcliff,* 17 N. Y. 580; *N. C. N. Bank* v. *Lord,* 33 Hun,
557; *Steward* v. *Cole,* 43 id. 164; *Dorthy* v. *Servis,* 46 id. 628;
*Smith* v. *Paine,* 24 J. & S. 451.) Plaintiff does not depend
upon any estate which Sewell had, but on the just though
anomalous doctrine, that by his purchase he acquired the right
which Sewell's creditors had to disregard the mortgages.
(*Hildreth* v. *Sands,* 2 Johns. Ch. 35; 14 Johns. 493; *Porter*
v. *Parmley,* 52 N. Y. 185; *Best* v. *Staple,* 61 id. 71.) That
Sewell had not possession to turn over to his assignee, distin-
guishes this case from the decisions in which mortgaged prop-
erty has been held to be within the administrative care of the
assignee. (*Dorthy* v. *Servis,* 13 N. Y. S. R. 1; *Sullivan* v.
*Miller,* 106 N. Y. 635.) The levy under which the plaintiff
purchased was actual and sufficient. (Code Civ. Pro. § 1405;
Crocker on Sheriffs, §§ 432, 464; Murfree on Sheriffs, § 965;
*Adams* v. *Bowe,* 12 Abb. [N. C.] 322; *Power* v. *Alias,* 21 J.
& S. 480; Drake on Attachments [6th ed.], § 263; Code Civ.
Pro. §§ 697, 1406.) The goods being subject to the execution
of December 20, 1887, there can be no doubt of the title con-
ferred by the sale under that execution. (*Hildreth* v. *Sands,*
2 Johns. Ch. 35; 14 Johns. 493; *Porter* v. *Parmley,* 52 N. Y.
185; *Best* v. *Staple,* 61 id. 71.) No demand was necessary
before this action. (*Gauley* v. *F. C. N. Bank,* 98 N. Y. 487.)

*John W. Pirsson* for respondents. Assuming that the two
chattel mortgages held by the defendants upon the property
described in the complaint, and under which the sale of said
property was made by them, have never been refiled as required
by the statute, and that for this reason they are void as against
the plaintiff, who is a judgment creditor of the mortgagor, this
is not sfficient to entitle the plaintiff to recover. He must also
show in addition that he has acquired some lien, legal or equit-
able, upon the property by virtue of his judgment, otherwise

he cannot recover. (*Buswell* v. *Lincks*, 8 Daly, 218 ; *South-ard* v. *Benner*, 72 N. Y. 424 ; *Geery* v. *Geery*, 63 id. 256 ; *Brinckerhoff* v. *Brown*, 4 Johns. Ch. 677 ; *Lane* v. *Lutz*, 1 Keyes, 203 ; *Thompson* v. *Van Vechten*, 27 N. Y. 568 ; *Jones* v. *Graham*, 77 id. 628 ; *Walker* v. *Henry*, 85 id. 130, 134 ; *Sullivan* v. *Miller*, 106 id. 635, 641 ; *Stewart* v. *Beale*, 7 Hun, 405 ; 68 N. Y. 629 ; *N. C. N. Bank* v. *Lord*, 33 Hun, 557, 564 ; *Button* v. *R. S. & Co.*, 43 id. 147, 148.) The plaintiff acquired no right, title or interest whatever in the property described in the complaint by virtue of any judgment against Sewell or of any execution sale thereunder, because the mortgagor, subsequent to the execution of the two mort-gages held by the defendants and the one held by Chase, and prior to the recovery of the judgments against him, said Sewell, and prior to the pretended levies and sale by the sheriff thereunder, had executed and delivered a general assignment of all his property in trust for the benefit of all of his creditors. (106 N. Y. 635 ; *Wheeler* v. *Lawson*, 103 id. 40, 46 ; *Lichten-berg* v. *Herdtfelder*, Id. 302, 306 ; *Childs* v. *Kendall*, 30 Hun, 227 ; 101 N. Y. 625 ; *Crouse* v. *Frothingham*, 97 id. 105.) The plaintiff did not acquire any right, title or interest what-ever in the property described in the complaint, by virtue of the alleged execution sale, and would not have acquired any right, title or interest therein, by reason of sale, even though said Sewell had not made said general assignment for the bene-fit of his creditors, because the defendants had reduced the mortgaged chattels to possession prior to the pretended levy and sale by the sheriff. (*Farmers' Bank* v. *Cowan*, 2 Keyes, 217 ; *Judson* v. *Easton*, 58 N. Y. 664 ; *Parshall* v. *Eggart*, 52 Barb. 367 ; 54 N. Y. 18 ; *Keller* v. *Paine*, 107 id. 83 ; *Powell* v. *Preston*, 1 Hun, 513 ; *Dutcher* v. *Swartwood*, 15 id. 31 ; *Q., etc., Co.* v. *Hart*, 48 id. 393 ; Code Civ. Pro. § 1717.) The pretended levy and sale by the sheriff under the executions in his hands were absolutely null and void ; and the plaintiff acquired no right, title or interest whatever by virtue thereof. (*F. N. Bank* v. *Dunn*, 97 N. Y. 149 ; *Sullivan* v. *Miller*, 106 id. 635 ; *Walker* v. *Henry*, 85 id. 130.) To charge the defend-

ants with a conversion of the property described in the complaint the plaintiff must prove a demand and refusal, otherwise there could be no conversion by them. (1 Addison on Torts, § 471.) The defendants are not liable in their representative capacity, as executor, etc., of Richard Mortimer, deceased, for the alleged conversion mentioned in the complaint. (*Thompson* v. *Whitmarsh*, 100 N. Y. 35 ; *Buckland* v. *Gallup*, 105 id. 453.) Assuming that the plaintiff is entitled to recover, he cannot recover, in any event, a greater sum than the amount due under the judgment recovered by him against Sewell. (Laws of 1883, chap. 279 ; Laws of 1873, chap. 501 ; Laws of 1879, chap. 417 ; *Fowler* v. *Haines*, 91 N. Y. 346 ; *Allen* v. *Judson*, 71 id. 77.)

EARL, J.  The plaintiff's title depends upon the validity of the levy and sale by virtue of the executions issued upon the judgments recovered against N. P. Sewell.  His contention is that the levy and sale were valid, although the executions were issued after Chase, the mortgagee, had for default taken actual possession of the mortgaged property, and after the mortgagor had executed a valid general assignment for the benefit of his creditors.  He claims that the mortgages were void as to the creditors of the mortgagor, because they were not refiled as required by the statute, and, therefore, that the mortgages were not an obstacle in the way of the executions.  As to the effect of the assignment, he claims that the mortgages were valid, as between the mortgagor and mortgagee, and that the legal title, as between the mortgagor and mortgagee, had passed out of the former to the latter, and hence that the assignment at most passed to the assignee for the benefit of creditors only the right of redemption which remained in the assignor.  It is difficult to state the precise ground upon which the plaintiff stands as to the assignment.  It is stated thus in the points of his learned counsel : " It must not be said that because Sewell had no interest to part with, **no right** could accrue to plaintiff by the purchase of Sewell's interest.  Plaintiff under settled authority does not depend upon any *estate which Sewell had,* but on the just though anomalous doctrine, that by his purchase

he acquired the right which Sewell's creditors had to disregard the mortgages." The defendant's claim that after default in the payment of the mortgages and particularly after possession taken by Chase under his mortgage, the mortgagor retained no right or interest in the property which was subject to levy and sale upon execution; that after the assignment whatever interest he had in the property was vested in the assignee, and thus that the assignment stood in the way of any levy upon or sale of the property by virtue of the executions, and furthermore, that while the sheriff held in his hands the writ of replevin he could not levy upon the same property by virtue of the executions. These are the main contentions of both sides, elaborately argued in the briefs submitted to us, and they present interesting questions, some of which are not easy of solution.

Without examining other questions, we think it is a sufficient answer to the plaintiff's claim of title that before the issuing of the executions under which he claims to have derived his title, a general assignment was executed by the judgment debtor for the benefit of his creditors, the validity of which is in no way assailed, which entirely divested him of the property. But for the mortgages it is conceded that the general assignment would have this effect. The plaintiff claims, however, that because the mortgages were void as to creditors, for not having been refiled according to the statute, there was something which did not pass from the judgment debtor to his assignee which the creditors, and they alone, could seize by virtue of their executions.

It is provided by the act chapter 279 of the Laws of 1833, as amended by the act chapter 418 of the Laws of 1879, that every mortgage of goods and chattels "which shall not be accompanied by an immediate delivery and be followed by an actual and continued change of possession of the things mortgaged, shall be absolutely void as against the creditors of the mortgagor, and as against subsequent purchasers and mortgagees in good faith, unless the mortgage, or a true copy thereof, shall be filed as directed in the succeeding section" of

the act. The next section provides for the filing of the mortgages; and the third section provides that every mortgage filed in pursuance of the act "shall cease to be valid as against the creditors of the person making the same, or against subsequent purchasers or mortgagees in good faith, after the expiration of one year from the filing thereof, unless within thirty days next preceding the expiration of each and every term of one year after the filing of such mortgage, a true copy of such mortgage, together with a statement exhibiting the interest of the mortgagee in the property thereby claimed by him by virtue thereof, shall be again filed in the office of the clerk."

While the mortgage in the cases mentioned in the act is valid as between the parties thereto, it is void as to the creditors of the mortgagor. But the act confers no title to the property upon the creditors, and by virtue of the act they take no interest in it. The mortgage is not to be treated as made for their benefit, and the mortgagee does not hold the property in trust for them. The effect of the statute is simply that in the cases mentioned, as between the creditors and the mortgagor, the mortgage has no force or operation whatever, and the case is to be treated as if the mortgage had never existed. While the mortgage is void as to creditors, they cannot touch the property until they come with an execution. As between the mortgagor and the creditors, if the latter can claim that the mortgage had no existence, so also can the former make the same claim. They cannot at the same time assert its invalidity and validity. They cannot seize the property as belonging to the mortgagor, and at the same time deny that he has any title to the property. They must constantly stand upon the position that the mortgage is a nullity. As between them and the mortgagor, both parties have the right to act as if the mortgage had never existed, and before the creditors obtain a lien on the property by virtue of their executions, the mortgagor may deal with the same in any honest way. He may sell it and convey an absolute title, subject to any rights the mortgagee has; or he can deliver the property to the mortgagee in payment of the debt secured by the mortgage, or the mort-

gagee can release the debt, with or without payment, and thus invest him with an absolute title, and the creditors will have no legal ground of complaint. In this case, at any time before the execution of the assignment, Sewell could have executed new mortgages upon the property to secure the same debts, and if they had been properly filed, they would have been valid and effectual as against his creditors.

It is stated that this view of the situation entirely defeats the creditor in such a case. If that be so, it is due only to the fact that he is in the situation of every creditor who comes with his execution after the debtor has in some way parted with or become divested of his property. It may be, as claimed on the part of the plaintiff, that the assignee could not impeach the title of the mortgagees because the mortgages were not refiled, for the reason that he, by virtue of chapter 314 of the Laws of 1858, can disaffirm and treat as void mortgages only when made in fraud of the rights of creditors and as the only infirmity alleged against these mortgages is that they were not refiled, it may be that he has no greater right to assail them than the mortgagor had. If, therefore, the creditors cannot levy upon the property in a case like this, and cannot through the assignee assail the mortgages, it is difficult to see what remedy they have. It is possible that they might maintain some equitable action but it is not necessary now to determine whether they could or not maintain such an action, as this is simply an action based upon a claimed title to recover damages for the conversion of the property. The plaintiff's misfortune is due to the fact that the executions were not issued until after the assignment was made and the judgment debtor had ceased to have any interest whatever in the property.

In the case of *Porter* v. *Parmley* (52 N. Y. 185), much relied upon by the learned counsel for the appellant, the judgment debtor had executed a mortgage which the mortgagee filed, but which he had not refiled, as required by the statute, and while the property remained in the possession of the mortgagor, and before any other title intervened between him and his creditors, it was seized and sold by virtue of the execution against him,

and it was held that the purchaser at the execution sale obtained a good title. The learned judge writing the opinion in that case carefully limited the doctrine therein announced to a case where the property remained in the possession of the mortgagor, and nothing had occurred to change the relations of the parties except the forfeiture. This case would be like that if the property had been seized by virtue of the executions before the making of the assignment. The intervention of the assignment between the creditors and the property makes the difference between that case and this.

The case of *Wheeler* v. *Lawson* (103 N. Y. 40) is an authority for the views we have expressed. There Shoemaker executed a chattel mortgage to plaintiff's assignor. He subsequently made a general assignment for the benefit of his creditors. The assignee, with the consent of Shoemaker, surrendered the property to the plaintiff as assignee of the mortgage, from whose possession it was forcibly taken by the defendant, who, as sheriff, had in his hands an execution against Shoemaker, issued upon a judgment rendered after the property came into the plaintiff's possession; and it was held that the invalidity of the chattel mortgage did not justify the taking, as in such case the title to the property was in the assignee of Shoemaker, and proof of the plaintiff's possession was sufficient to sustain the action. In that case the mortgage was not filed and there, as here, it was good as between the parties thereto, and the mortgagor remained in possession until he executed the general assignment. The precise point decided in that case was that after the execution of the assignment the sheriff could not levy upon and seize the property by virtue of an execution in his hands.

The case of *Kitchen* v. *Lowery*, recently decided in the Second Division of this court, is to the same effect. There the action was brought by the plaintiff as a judgment creditor of Samuel S. Lowery and George M. Lowery, to set aside a general assignment for the benefit of creditors and two chattel mortgages made by them. One of the mortgages held by Titus Sheard was executed on the 24th

day of December, 1883; the other was executed to Nora K. Lowery on the 1st day of September, 1884. Both mortgages were filed on the 24th day of August, 1885, on which day, after the filing of the mortgages, the Lowerys made a general assignment of all their property for the benefit of their creditors. The debt of Nora K. Lowery was preferred in the assignment, it being stated therein that she held as collateral security a chattel mortgage, subject, however, to the prior mortgage of Sheard. The assignors delivered to the assignee all their property, including that covered by the chattel mortgages. On November 18, 1885, Sheard took the property under his mortgage and advertised and sold it at public auction. The trial court found that the mortgages and assignment were made in good faith and were not intended to defraud creditors. The learned judge, writing the opinion of the court, said : " Whilst the mortgagee of chattels is deemed the owner and has the right to reduce them to possession, the mortgagor has the right to redeem before sale or to receive the surplus, if any, that shall arise upon a sale. He has an interest in the property which is assignable, and such interest under a general assignment for the benefit of creditors passes to the assignee." He further said : " They (the mortgages) may be void as to creditors for the reason that they were not filed at the time their credits were given ; but if creditors neglect to avail themselves of the means provided by statute to secure the payment of their claims until the mortgagor has transferred his interest to an assignee, they thereby lose the advantage which they otherwise might have gained. In such a case the assignee acquires a superior right to the individual creditor, and takes the same in trust for all the creditors. Before such transfer the creditor, upon obtaining judgment, might have secured a lien upon the personal property of the judgment debtor by the levy of an execution thereon. He might also have obtained a lien by a like levy upon the property covered by the mortgage. The mortgage being void as to him, the property would be regarded as that of the judgment debtor, and the levy would have the

same force as if no mortgage existed. But waiting until after the assignment, he loses his right to acquire a lien by levy. * * * The mortgagors, by their assignment, have transferred all of their interest therein to the assignee. The mortgagee, Sheard, has taken the property under his mortgage and sold it. The property mortgaged has now passed into the hands of the purchasers under such sale, and whatever rights the plaintiff may have had, none remain that are available to afford him relief." It is true that in each of the two cases last cited, the mortgagor was in possession of the mortgaged property at the time he executed his general assignment but that circumstance does not materially distinguish those cases from this. There was default in the mortgages involved in those cases as in this; and upon default of the mortgagor of chattels, the absolute legal title vests at once without possession in the mortgagee, and all the mortgagor has left is a right of redemption in equity, and there is no interest in the property left in him which can be seized by execution. (*Hamill* v. *Gillespie*, 48 N. Y. 556; *Porter* v. *Parmley, supra; Judson* v. *Easton*, 58 N. Y. 664; *Casserly* v. *Witherbee*, 119 id. 523; *Leadbetter* v. *Leadbetter*, 125 N. Y. 290.)

Therefore, under the general assignment of Sewell, the rights of the assignee in and to the mortgaged property were just as great as they would have been if the assignment had been executed before either of the mortgagees had taken possession of the property. After default in a chattel mortgage, the mortgagor has a beneficial interest in the property, and even after the mortgagee has taken possession, practically he holds it only as security for his debt which the mortgagor can pay, and thus he can redeem his property; and he has a real interest which he can convey, although the mortgagee has taken possession of the property.

The position of the plaintiff, therefore, is this: If he asserts the validity of the mortgages for any purpose as between the creditors and the mortgagor, then the title to the property was in the mortgagees, and was not subject to levy upon the executions. If he asserts that the mortgages were, as between

him and the mortgagor, invalid and non-existent, then the property passed under the assignment and was out of reach of the executions.

We, therefore, see no reason to doubt that the judgment below is right, and it should be affirmed, with costs.

All concur.

Judgment affirmed.