JACKSON W. BOWDISH, as Assignee, etc., of MORTEMORE ALLISON and Another, Respondent, v. ESEK PAGE and Others, Appellants.

*Chattel mortgage, when void as to creditors — its invalidity, how questioned — mortgagee in possession — assignee for the benefit of creditors — election of remedies — transfer of property as security — redemption thereof — a sale, evidence of the value of chattels.*

A chattel mortgage, if not refiled within thirty days next preceding the expiration of a year from the time it was filed, ceases to be valid as against creditors of the mortgagor, under the provisions of chapter 418 of the Laws of 1879, but its validity cannot be questioned by the creditors of the mortgagor until after they have recovered a judgment upon their claim against the mortgagor and an execution has been issued upon the same.

The possession of personal property taken by a mortgagee pursuant to a chattel mortgage, void as against the creditors of the mortgagor, is not effectual to support title as against an existing creditor of the mortgagor, although his process by execution is issued after the possession has been so taken by the mortgagee, where the infirmity of the mortgage as against the creditors of the mortgagor existed at the time it was made and delivered.

The rights acquired in chattels by an assignee for the benefit of creditors (holding a chattel mortgage thereon), who takes from the debtor a delivery of the chattels to secure the claim made by him, agreeing to sell the goods and apply the proceeds on the debt, no mention being made of the mortgage, considered.

Since the enactment of chapter 466 of the Laws of 1877 an assignee for the benefit of creditors is something more than the hand of the assignor; he is a trustee for the creditors, and his transactions in respect to the assigned property may be deemed to have been conducted by him as such trustee in behalf of such creditors.

Where there is a transfer of property as security, a right of redemption may exist consistently with the transfer, notwithstanding the default of the person making it, and may be foreclosed by a sale of the property; if it be a mere equity of redemption, not salable upon execution, there is no remedy in a proceeding taken to make a sale of the same in that manner.

When a party has pursued one of two inconsistent remedies he is not afterwards permitted to make the other available.

An assignee for the benefit of creditors cannot by pursuing a futile remedy produce a forfeiture of the vested rights of his *cestuis que trust* to have the property, held by him in that relation, made available for their benefit, nor can he voluntarily relinquish their rights in that respect. His power and duty, in the execution of the trust, are in harmony and he cannot effectually proceed in contravention of either.

Although a sale of chattels was not made at public auction, but at a private sale, the price for which such chattels were sold is competent evidence on the question as to the value of the goods.

APPEAL by the defendants, Esek Page and others, from a judgment of the Supreme Court in favor of the plaintiff, entered in the office of the clerk of the county of Steuben on the 3d day of June, 1892, upon the report of a referee.

*George N. Orcutt* and *James H. Stevens*, for the appellants.

*Gabriel L. Smith*, for the respondent.

BRADLEY, J. :

The plaintiff, as assignee for the benefit of creditors of Mortemore Allison and Lawrence Allison, brought an action against the defendants to recover for the alleged conversion of a quantity of boots and shoes. The defendants allege, by way of justification, that the property was taken by virtue of an execution issued upon a judgment in favor of the defendant bank against Isaac Allison, and that the title was then in him.

It appears that Isaac Allison was engaged in the business of manufacturing boots and shoes at Canisteo, N. Y. ; that he became indebted to Mortemore and Lawrence Allison, who were in the business of banking in the name of " The Bank of Canisteo," and they had assumed some liabilities for him as accommodation indorsers ; that on the 1st of October, 1883, to secure payment of such indebtedness and to indemnify them against liability as such indorsers, Isaac Allison, by an instrument in writing, sold and transferred to them all the boots and shoes, finished and unfinished, all the leather, stock and other materials on hand in and about the factory occupied by him, and certain other property, giving them power to take possession of the property. The instrument was filed with the clerk

of the town of Canisteo (where the mortgagor resided) on October 3, 1883. Afterwards, on July 21, 1884, Mortemore Allison and Lawrence Allison made to the plaintiff a general assignment for the benefit of their creditors.

The referee found that, on July 22, 1884, the plaintiff went to the factory where the goods were, with one of his assignors, who turned them over to him, and that on the next day (July twenty-third) they went there again, and, at the request of the plaintiff, Isaac Allison went with them; that the plaintiff there insisted that Isaac turn over to him his interest in the stock of goods and give him immediate possession of them, which Isaac at first declined to do; that the plaintiff promised him that if he surrendered the possession to him he would credit the proceeds of the property as fast as sold upon his, Isaac's, account, and thereupon Isaac delivered the possession of the goods to the plaintiff, who took possession of them and took from Isaac the keys of the building in which the goods were, locked the door when they left it and kept the keys; that the plaintiff then became and was vested with the entire title and possession of the goods, and that from that time thereafter until dispossessed by the defendants, the plaintiff, as assignee, had the actual and complete possession of the goods in question for the benefit of the creditors of Mortemore and Lawrence Allison.

On April 30, 1884, the defendant bank recovered a judgment for $12,785.03 against Isaac Allison upon his liability as indorser of notes made prior to the date of the mortgage before mentioned. Execution upon the judgment was issued July 29, 1884, to the defendant Page as sheriff, and by his deputy, the defendant Murray, was levied upon the property August 1, 1884. It was by virtue of the levy taken away March 21, 1885, and sold in April, 1885.

The referee found that the bill of sale or chattel mortgage was made, delivered and taken in good faith, for a good consideration and without any intent of any of the parties to defraud the creditors of the mortgagor.

He also found that on October 31, 1883, the mortgagees took possession of the property with the consent of the mortgagor, that the latter continued to have access to the factory building, proceeded to sell some of the goods for the mortgagees, and paid a portion of the proceeds to them up to July 21, 1884, and that such con-

tinued access of Isaac, together with the dealings between him and them previous to that day rendered the sale by such chattel mortgage and delivery from him to them void as to his creditors.

The chattel mortgage was not refiled within thirty days next preceding the expiration of the year from the time it was filed. It, therefore, ceased to be valid as against the creditors of the mortgagor. (Laws 1879, chap. 418.) But the defendants were in no position to question the validity of the mortgage until the bank judgment was recovered and execution issued upon it. (*Button* v. *Rathbone, Sard & Co.*, 126 N. Y. 187.) ,

The finding of the referee, that the mortgage in its inception was valid as against the creditors of the mortgagor, has the support of evidence, and it is so treated. The plaintiff claims that on the 23d day of July, 1884, he acquired, and thereafter had, the actual and continued possession of the goods until they were taken by defendants in March, 1885, and that during that time he had title to them. If that proposition of fact as found by the referee is sustained by the evidence, the omission to refile the mortgage is not available to the defendants, as such taking possession by the plaintiff preceded in point of time the issuing of the execution upon the judgment of the defendant bank. (*Kitchen* v. *Lowery*, 127 N. Y. 55 ; *Tremaine* v. *Mortimer*, 128 id. 1 ; *Stephens* v. *Perrine*, 69 Hun, 578.)

The mortgage was valid between the parties to it, and although it was valid in its inception it must, in view of the finding of the referee, be assumed that by the dealings between them the mortgage had, at the time of the assignment to the plaintiff, become void as against creditors of the mortgagor. It has been held that possession of property taken pursuant to a chattel mortgage, void as against the creditors of the mortgagor, is not effectual to support title as against an existing creditor of the mortgagor, although his process by execution is issued after the possession has been so taken by the mortgagee. (*Dutcher* v. *Swartwood*, 15 Hun, 31 ; *Stimson* v. *Wrigley*, 86 N. Y. 332, 339 ; *Quinn & Co.* v. *Hart*, 48 Hun, 393 ; *Mandeville* v. *Avery*, 124 N. Y. 376.)

In the cases where it was so held the infirmity of the mortgage as against the creditors of the mortgagor existed at the time it was made and delivered. In that respect they are distinguished from the present case. But, assuming that by reason of the fact so found

## 174　BOWDISH v. PAGE.

by the referee the plaintiff's claim of title as against the defendants cannot rest solely upon that derived from his assignors of the general assignment, it may nevertheless be sustained if supported by some transfer from Isaac Allison other than that expressed in the mortgage. (*Brown* v. *Platt*, 8 Bosw. 324; *Hauselt* v. *Harrison*, 105 U. S. 401; *Stanley* v. *National Union Bank*, 115 N. Y. 123.)

The referee did not in express terms find that the possession was or was not so taken by the plaintiff by virtue of the chattel mortgage. By reference to the evidence upon the subject of the transaction of July 23, 1884, at the factory building, it is seen that the plaintiff testified that he told Isaac that he, as assignee, had some claims against him, consisting of notes and book accounts for overdraft, and called his attention to four notes of $2,000 each, and to his overdraft of $6,800, as his indebtedness, exclusive of interest, and asked him if he could pay. On receiving his answer that he could not, the plaintiff demanded of him that he turn over to him his interest in the stock of goods in the building; that Isaac, claiming that he had been receiving some commission from L. &. M. Allison, insisted that if he turned over the goods to the plaintiff the arrangement should be continued; that the plaintiff refused to do so, stating that he knew nothing of their arrangement, and that he wanted the title to the goods absolutely, and as fast as they were sold he would apply the proceeds in payment of his indebtedness; that Isaac said he would turn the goods over to the plaintiff, and then went through the building singling out the goods belonging to him or those in which he claimed to have an interest. He then, stating that he surrendered the possession of the goods to the plaintiff, gave him the keys, and the plaintiff then said that he accepted the goods and claimed them from that time as assignee, etc. These included the goods in question. It appears that some of the boots and shoes and stock in the factory building had been turned out to one Crandall prior to the time of the general assignment to the plaintiffs, and that the Crandall goods, or so much of them as were not in the meantime sold, remained in the building as long as those in question continued there. The indebtedness of Isaac Allison to the plaintiff as such assignee was as so stated by the latter.

In the interview between him and Isaac Allison on the 23d of July, 1884, when the possession of the property was so delivered to

and taken by the plaintiff, the chattel mortgage was not mentioned, and the inference from the evidence is permitted that the plaintiff was then seeking payment or security for the debt then referred to against Isaac, and that the transfer and possession then made to and taken by him were not dependent upon the mortgage. In support of the finding of the referee to that effect there is evidence tending to prove that the possession of the property taken by the plaintiff on July 23, 1884, was continued until it was taken away by the defendants by virtue of the execution issued upon the judgment recovered by the defendant bank against Isaac Allison.

In *Bullis* v. *Montgomery* (50 N. Y. 352) and *Steele* v. *Benham* (84 id. 634) no circumstances appeared tending to show an actual change of possession of the property. Here the plaintiff went into the building, and not only were words used to the effect that the possession of the property was surrendered and taken, but in that connection the parcels of property were pointed and singled out and all was done that could well be accomplished for the purpose other than actually taking the goods from the building, and by giving him the keys the property was placed in the exclusive control of the plaintiff. In view of the character of the property this was sufficient.

And the fact that Isaac Allison, having charge of the Crandall goods there, had from time to time access to the building, and occasionally was authorized by the plaintiff to sell for the latter goods from the stock, did not necessarily have the effect to deny to the plaintiff the continued possession of the goods. This, upon the evidence, was a question of fact for the referee. (*Stanley* v. *National Union Bank*, 115 N. Y. 122.)

It may be observed that since the statute upon the subject of assignments for the benefit of creditors was enacted, the assignee is something more than the hand of his assignor. He is a trustee for the creditors. (Laws of 1877, chap. 466.) And his transaction in respect to the property in question may be deemed to have been conducted by him as such trustee in behalf of such creditors.

It is further urged on the part of the defense that the plaintiff, by a proceeding taken somewhat inconsistently with his claim of title to the property, denied to himself the right to effectually assert reliance upon such title in this action. It appears that on December 4,

1884, a judgment in his favor upon confession was entered upon the notes so held by him against Isaac Allison ; that upon it was then issued an execution by virtue of which Isaac's.interest in the property was advertised for sale, sold and bid in by him for the sum of $151. This levy and sale were afterwards set aside by the court. He was at liberty to take a judgment. But it is contended that the issue of the execution, levy and sale constituted a proceeding inconsistent with his right to retain the property under any claim of previous transfer to him, and, therefore, it was an election upon the principle that when a party has pursued one of two inconsistent remedies he is not afterwards permitted to make the other available. That doctrine may not be applicable to the situation in the present case. Where there is a transfer of property as security a right of redemption may exist consistently with the transfer, notwithstanding the default of the person making it, and may be foreclosed by sale of the property. (*Bragelman* v. *Daue*, 69 N. Y. 69.) And if it be a mere equity of redemption, not salable upon execution, there can be no remedy in the proceeding to make a sale in that manner. (*Leadbetter* v. *Leadbetter*, 125 N. Y. 290.)

There is a further reason why the doctrine of election is not applicable to this case. As has been remarked, the plaintiff is a trustee for the creditors of his assignors, and he cannot, by pursuing a futile remedy, produce a forfeiture of the vested rights of his *cestuis que trust* to have the property held by him in that relation made available for their benefit, nor can he voluntarily relinquish their rights in that respect. His power and duty in the execution of the trust are in harmony, and he cannot effectually proceed in contravention of either. (*Shepherd* v. *McEvers*, 4 Johns. Ch. 136 ; *Russell* v. *Russell*, 36 N. Y. 581 ; *Fitzgerald* v. *Topping*, 48 id. 438.)

The question of value of the goods was contested at the trial. The evidence on the part of the plaintiff was to the effect that their value was upwards of $10,000. They were bid in at the sheriff's sale for the defendant bank. And it employed persons who were competent for the purpose to examine the goods, make an inventory of them and their value. Those persons were called as witnesses by the defendants, and by their evidence it appeared that they did so, and that they estimated the aggregate value of the goods to be

$4,542.80. And the defendants called another witness, who was sent to examine the goods by the person who contemplated purchasing, and afterwards purchased them, and he, after his examination, put the value at $5,100. His evidence is that he arrived at the price he was willing to pay, and that such sum mentioned by him was the fair market value. Another witness called by the defendants made an estimate of the value below that of any of the other witnesses, but his examination was made of a portion of the stock only. And the lowest sum which the referee, upon the evidence, could fairly adopt as the value was $4,542.80. He, however, found that the value was $8,691.25. This was within the evidence of value on the part of the plaintiff. But the difficulty in sustaining the recovery arises upon the exception to the exclusion of the evidence offered by the defendants to prove the price for which the sale of the goods was made by the Citizens' National Bank to Ingalls, who made the purchase. In connection with the offer the defendants proposed to prove that the goods were placed upon the market in charge of a competent person, that a proper effort was made to sell them at the best obtainable price, and that the price paid by Ingalls was the highest that the bank could obtain for them. The evidence was excluded and the defendants excepted. The rule seems to be well settled that although the sale was not made at public auction, but at a private sale, the evidence of the price for which it was made was competent and its exclusion error. ( *Wells* v. *Kelsey*, 37 N. Y. 143; *Hoffman* v. *Conner*, 76 id. 121; *Hangen* v. *Hachemeister*, 114 id. 566.)

The weight which the evidence would have had, or whether it would have had any, with the referee, is a question which cannot be determined on this review, but in view of the evidence introduced, including that of the person who, in making an estimate of the value, represented the purchaser, it would seem that the defendants will not be prejudiced by the error in the exclusion of the evidence by the adoption of the lowest price before mentioned, if the plaintiff is disposed to do so to avoid the necessity of another trial. In the view taken no other question requires consideration.

The judgment, therefore, must be reversed and a new trial granted, costs to abide the event, unless the plaintiff stipulates to

reduce the recovery of damages to $4,542.80 and interest thereon from the 21st day of March, 1885, and in that event the judgment be so modified, and as modified affirmed, without costs of this appeal to either party.

DWIGHT, P. J., LEWIS and HAIGHT, JJ., concurred.