WILLIAM A. DAVIDSON, Respondent, *v.* WALTER L. OSBORNE, Appellant.

(County Court, Saratoga County, January, 1912.) ·

Chattel mortgages — What constitutes a chattel mortgage — Recordation — Original filing — In general — Delay in filing — Effect of record as notice.

Where growing grass belongs to one not the owner of the land, it is personal property and may be mortgaged.

Where the grass, of which certain hay delivered to defendant by W. was made, was standing or growing at the time it was mortgaged on land owned by the plaintiff but occupied and worked by W. under an agreement with plaintiff by which he was to sell the produce therefrom and divide the money in certain proportions, but the chattel mortgage was not filed until five months after its execution, it is absolutely void as against the mortgagor's creditors and subsequent purchasers in good faith.

The defendant, who was a simple contract creditor of W. both at the time of the execution of plaintiff's chattel mortgage and when the hay covered thereby was delivered to defendant and accepted by him in payment of W.'s indebtedness, is not liable in an action brought by the mortgagee as such for the conversion of the hay.

APPEAL by defendant from a judgment for $105.61, damages and costs, in favor of plaintiff, rendered by a justice's court in the town of Charlton, Saratoga county, N. Y., after a trial by jury. The appeal was not for a new trial and was heard by the county judge of Schenectady county, the county judge of Saratoga county being disqualified.

County Court, Saratoga County, January, 1912.    [Vol. 75.

Harry P. Pendrick, for appellant.

Burton D. Esmond, for respondent.

WHITMYER, J.    The action was brought to recover damages for the conversion of certain hay.

The plaintiff and one George Wagar made an oral contract in the month of March, 1910, under and by which the latter was to work plaintiff's farms in the town of Charlton, Saratoga county, N. Y., and plaintiff was to sell the stock and produce therefrom, divide the money, give Wagar one-third thereof and retain the balance.    To secure moneys due or to become due before April 1, 1911, by reason of any business relations existing between himself and plaintiff, Wagar, on June 15, 1910, delivered to plaintiff a chattel mortgage, which, among other things, covered " all standing grass and all other crops in or to be put in " on the Davidson farm, one of the farms worked by him under the agreement.    The mortgage was filed November 10, 1910.    At the time of its execution, Wagar was indebted to defendant in the sum of thirty dollars, or a little less, for groceries theretofore sold and delivered to him.    The amount of his indebtedness at the time of filing does not appear, but it kept increasing from the time it was executed and, on February 1, 1911, amounted to seventy-four dollars, or thereabouts.

Defendant first learned about the existence of the mortgage in January, 1911, and Wagar, thereafter and some time in February, 1911, delivered to him ten tons of hay, made from the grass covered by said mortgage, in payment of his indebtedness.    Defendant did not have a judgment at this time. Plaintiff, claiming under his mortgage, thereupon commenced this action, which was tried with a jury, and obtained a verdict for ninety dollars.

The grass, of which the hay delivered to defendant by Wagar was made, was standing or growing, at the time it was mortgaged, on land belonging to plaintiff, but occupied and worked by Wagar, under an agreement with plaintiff by which he was to work the same and plaintiff was to sell the stock and produce therefrom, divide the money, pay Wagar

the one-third thereof and retain the balance. Plaintiff claimed the hay, not as owner of the land and not under his said agreement with Wagar, but under the mortgage from him. It may be assumed, therefore, that Wagar had the title to the grass and the right to mortgage the same by chattel mortgage, if it was personal property. That it was personal property seems to be clear. As a general principle, growing grass is a part of the realty (Green v. Armstrong, 1 Den. 550; Sexton v. Breese, 135 N. Y. 391); but, where it is owned by one who does not own the land, it is personal property and may be mortgaged and sold as such. Smith v. Jenks, 1 Den. 580.

The grass and the hay from it remained in the possession of Wagar, the mortgagor, until he delivered it to defendant in February, 1911. But the mortgage was not filed until November 10, 1910, five months after its execution. The mortgage, therefore, was absolutely void as against the creditors of the mortgagor and as against subsequent purchasers and mortgagees in good faith. Lien Law (Laws of 1909, chap. 38), art. 10, § 230. Defendant was a creditor. When the mortgage was made Wagar owed him about thirty dollars for goods sold and delivered; and, when the hay was delivered, he owed him about seventy-four dollars. The indebtedness at the time of filing does not appear. Defendant did not have judgment for the debt; but that did not affect his right, because a simple contract creditor is as much within the protection of the statute as one whose debt has been merged in a judgment. Southard v. Benner, 72 N. Y. 424; Karst v. Gane, 136 id. 316, 323; Russell v. St. Mart, 180 id. 359, 360; Skilton v. Codington, 185 id. 80, 86. It is true that a simple contract creditor cannot assert his rights by action as a creditor, or interfere with the property of his debtor, until he has a judgment and a lien or a right to a lien upon the specific property. Cases, *supra.* He is not required, however, to procure such judgment and lien in order that he may receive or accept property which is delivered to him by his debtor in payment of the latter's indebtedness to him, in a case where such property is covered by a chattel mortgage which is void as to himself. Tremaine

v. Mortimer, 128 N. Y. 1, 8; Mandeville v. Avery, 124 id. 376; Stephens v. Perrine, 143 id. 476; Bowdish v. Page, 153 id. 109; Stephens v. Meriden Britannia Co., 160 id. 187. In Tremaine v. Mortimer, *supra,* Judge Earl, speaking of the rights of the mortgagor named in an unfiled chattel mortgage and his creditors, says: "As between them (the creditors) and the mortgagor, both parties have the right to act as if the mortgage had never existed, and, before the creditors obtain a lien on the property by virtue of their executions, the mortgagor may deal with the same in any honest way. He may sell it and convey an absolute title, subject to any rights the mortgagee has or he can deliver the property to the mortgagee in payment of the debt secured by the mortgage." This case was quoted with approval in the case of Stephens v. Perrine, *supra.* That was an action to set aside a chattel mortgage which had not been filed and in which no change of possession took place until the mortgagee availed herself of its terms to take and sell the property covered. It was held that the mortgage was void as to the existing creditors of the mortgagor and that the subsequent act of the mortgagee in taking possession and selling and purchasing at the auction sale gave her no right to the property, even though the creditors had not recovered judgment. Judge Peckham, writing in that case, says: " The mortgage, as to the creditors of the mortgagor, was always void. It continued to be void notwithstanding the fact that the mortgagee assumed to take possession under and to sell the property by virtue of such void instrument. As between these mortgagors and creditors, it was the same as if the mortgage did not exist, and the mortgagee could not, as against these creditors, obtain any rights under it. * * * As against them the mortgagee could not rightfully take the property by virtue of this void instrument, and if she did take it in spite of the fact that the mortgage was void and no protection to her, how could she secure any further or greater right by the sale of the property and the receipt of its value? "

It is clear from the cases cited that plaintiff, under the conditions as they existed, could not have taken the hay

by virtue of his mortgage and sold or disposed of it as against defendant, even though the latter did not have judgment and a lien by execution; and it would seem to follow that he cannot maintain this action against defendant to recover damages for its conversion. On the other hand, though the mortgage was void as against himself, defendant could not have taken the hay from the mortgagor, since he did not have a judgment and a lien by execution. But the mortgagor had the right to dispose of it as he saw fit, so long as he disposed of it honestly. He could have delivered it to the mortgagee in payment of the debt secured by his mortgage; and, if he had done so, defendant could not have questioned the delivery. That was the risk which defendant took by not obtaining judgment and a lien by execution. The mortgagor did not deliver the hay to the mortgagee, but delivered it to the defendant in payment of the debt due and owing to him; and the latter received it in payment of that debt. The mortgagor was actually indebted to defendant and had as much right to deliver the hay to him in payment as he would have had to deliver it to the mortgagee in payment of the debt secured by the mortgage, and defendant had the right to receive it.

The fact that defendant had notice or knowledge of the existence of the mortgage before the delivery of the hay is of no importance, because he was a creditor. Farmer's Loan & Trust Co. v. Hendrickson, 25 Barb. 484.

And the facts that plaintiff was indebted to defendant in the sum of seventy-four dollars, at the time of the delivery of the hay, and that the verdict of the jury was for ninety dollars damages, do not affect the result, since the hay was delivered in payment of the debt.

In addition to this, the evidence of the route by which and the manner in which the hay was drawn and delivered to defendant was improper and prejudicial, and its admission was error requiring reversal.

The judgment must be reversed, with costs.

Judgment reversed, with costs.