In re NEW YORK ECONOMICAL PRINTING CO.

(Circuit Court of Appeals, Second Circuit. August 22, 1901.)

No. 156.

1. BANKRUPTCY—RIGHT OF TRUSTEE TO AVOID LIENS—EXTENT.

Bankr. Act 1898 does not vest a trustee with any better right or title to the bankrupt's property than belonged to the bankrupt or to his creditors at the time when the trustee's title accrued. Sections 67a, 67b, providing that claims which, for want of record, or for other reasons would not have been valid liens as against the claims of the creditors of the bankrupt, shall not be liens against his estate, and that whenever a creditor is prevented from enforcing his rights as against a lien created or attempted to be created by his debtor, who afterwards becomes a bankrupt, the trustee may enforce such rights for the benefit of the estate; and section 70e, providing that the trustee may avoid any transfer by the bankrupt of his property which any creditor of such bankrupt might have avoided,—are designed to subrogate the trustee to rights of creditors, as against liens or transfers, which exist at the time of the bankruptcy, but they vest him with no additional rights. If a lien was invalid as to one creditor, but valid as against others, or if one creditor only was in position to enforce his rights as against it, the trustee can avoid it only to the extent of the claim of such creditor.

2. SAME—CHATTEL MORTGAGES—NEW YORK STATUTE.

The chattel mortgage statute of New York (Laws 1833, c. 279, and amendments) provides that any mortgage filed in pursuance thereof, "shall cease to be valid as against the creditors of the person making the same," or against subsequent purchasers or mortgagees, after the expiration of one year from the filing thereof, unless, within 30 days next preceding the expiration of each and every term of 1 year after such filing, a copy, together with a statement, shall be again filed. As construed by the highest court of the state, a failure to comply strictly with such requirement renders a mortgage invalid as against creditors, and no subsequent compliance can restore its validity. But it is also held that no creditor can take advantage of such noncompliance unless armed with a legal process under which the mortgaged property may be seized, or is otherwise in a position to enforce a lien upon it, and that the mortgage is good as to creditors at large as well as between the parties. *Held* that, where a mortgagor became a bankrupt after de-

fault by the mortgagee in failing to file a copy of the mortgage as required by the statute, the trustee could avoid the mortgage only to the extent of the claims of judgment creditors, who were at the time of the adjudication in a position to enforce their claims against the property, since general creditors had at that time no perfected right to impeach the mortgage, and no right which could not have been defeated at any time by the surrender of the property to the mortgagee.

3. CORPORATIONS—MORTGAGES—VALIDITY UNDER NEW YORK STATUTE.

The provision of the stock corporation law of New York requiring the filing of the consent of stockholders to the execution of a mortgage by the corporation is for the protection of the stockholders, and only stockholders can take advantage of a failure to comply with it.

Petition for Revision of Proceedings of the District Court of the United States for the Southern District of New York, in Bankruptcy.

A. R. Latson, for petitioner.

Henry L. Stimson, for respondent.

Before WALLACE, LACOMBE, and SHIPMAN, Circuit Judges.

WALLACE, Circuit Judge. The question in this case is whether the trustee in bankruptcy or the mortgagee in a chattel mortgage executed by the bankrupt is entitled to a fund in the registry of the bankruptcy court arising from a sale of the mortgaged property pursuant to an order of that court, which order provided that all liens upon the property should attach to the proceeds. The mortgage was made July 31, 1895, and secured the payment of certain bonds maturing January 1, 1911. Possession of the mortgaged property was not delivered to the mortgagee, and the property remained in the possession of the mortgagor from the time of the execution of the instrument until the title of the trustee accrued. The mortgage was filed August 1, 1895, in all respects in compliance with the statutes then in force (Laws 1833, c. 279). The statute reads as follows:

"Any mortgage filed in pursuance to this act shall cease to be valid as against the creditors of the person making the same, or against subsequent purchasers or mortgagees in good faith, after the expiration of one year from the filing thereof, unless within thirty days next preceding the expiration of each and every term of one year after the filing of such mortgage, a true copy of such mortgage, together with a statement exhibiting the interest of the mortgagee in the property thereby claimed by him by virtue thereof, shall be again filed," etc.

The statute was amended in 1896 (Laws 1896, c. 528), whereby, in lieu of the filing of a true copy of the mortgage within 30 days, it was provided that a statement should be filed describing the mortgage, and the time and place of its filing. Subsequent to this amendment, and August 8, 1896, a copy of the mortgage was filed, but, as this was eight days too late, it is conceded that the filing did not comply with the original or the amended statutes. July 31, 1897, a copy of the mortgage was again filed, but no statement was filed of the time or place of the filing of the original. Subsequently, but in 1897, the statute was again amended, and thereby the original provisions were substantially reinstated. On July 14, 1898, a copy of the mortgage was filed in the proper office, together with a statement, complying in all respects with the statute as amended in 1897. On each occa-

sion of refiling a· copy of the mortgage both the mortgagor and the mortgagee filed also a statement setting ,forth that the whole amount· of the debt secured by the mortgage remained unpaid. Debts were contracted by the mortgagor after the making of the mortgage, and these have been proved against the bankrupt's estate; but at the time when the petition for the adjudication was filed only one creditor had brought any action for the collection of his debt. That creditor (one Reilly) had obtained a judgment, and an execution was issued upon that judgment to the sheriff of the county in which the mortgaged property was, and was returned unsatisfied. It is insisted for the trustee in bankruptcy that from August 1, 1896, the mortgage ceased to be valid as against creditors of the mortgagor because the statutory requirements in respect to filing were not complied with, and that because it became invalid as to them the trustee took the title of ,the mortgaged property discharged from any lien in favor of the mortgagee.

According to the settled construction of the chattel mortgage statute by the decisions of the New York courts, the provisions in respect to filing must be strictly followed. Compliance stands as a substitute for immediate delivery and an actual and continued change of possession of the mortgaged property, and repels the· conclusive presumption of fraud which would otherwise infect the transfer. The effect of noncompliance is to nullify the mortgage as against all creditors of the mortgagor whose debts arise while the property remains in his possession, whether these debts originated previous to or after the default, and whether with or without notice of the existence of the mortgage at the time of giving credit. A default in complying with the requirements of the statute is not cured by any subsequent act of attempted compliance, and, although the departure has been rectified in all respects save as to the time within which the act is required to be done, a creditor· who afterwards obtains a judgment can subject the property to his execution as though the mortgage had never existed. By the peremptory language of the statute the mortgage ceases to be valid by failure to comply with the requirements. It cannot, therefore, be revived except by some act of the parties which is equivalent to the making of a new transfer of the chattels,—such as a surrender and redelivery of the instrument, or a surrender of the possession of the chattels in satisfaction or as a further security of the debt; but no act of the mortgagee alone would be effective. These propositions are well settled by the judgments of the courts of last resort. Thompson v. Van Vechten, 27 N. Y. 568; Karst v. Gane, 136 N. Y. 316, 321, 32 N. E. 1073; Tremaine v. Mortimer, 128 N. Y. 1, 27 N. E. 1060; Marsden v. Cornell, 62 N. Y. 215; Porter v. Parmley, 52 N. Y. 185; Ely v. Carnley, 19 N. Y. 496; Dillingham v. Bolt, 37 N. Y. 198; Stephens v. Perrine, 143 N. Y. 476, 39 N. E. 11. In attempting to mitigate the supposed hardship of; the statute when the question has arisen between the mortgagee.and a creditor with notice of the existence of the mortgage at the time the credit was given, some of the lower courts have given to it a more latitudinarian interpretation (Swift v. Hart, 12 Barb. 530; Nixon v. Stanley, 33 Hun, 247; Newell v. Warner, 44

Barb. 258); but these decisions cannot be reconciled with its plain language, and are inconsistent with the opinions of the courts of last resort. Adopting the construction placed upon the statute by the highest courts of the state, it is manifest that at all times after August 1, 1896, the date of the expiration of one year from the filing of the mortgage, any creditor of the mortgagor was entitled to treat the lien as void upon obtaining a judgment and execution. The omission to file a copy during the 30 days preceding August 1, 1896, was a fatal departure from the statute. So, also, was the omission to file during July, 1897, a statement showing the time and place of the original filing of the mortgage. The statute then in force made the filing of this statement essential. It has been decided in Stevenson Brewing Co. v. Eastern Brewing Co., 22 App. Div. 524, 48 N. Y. Supp. 89, and McCrea v. Hopper, 35 App. Div. 572, 55 N. Y. Supp. 136, that the refiling of a copy of the mortgage with the dates of filing and refiling indorsed thereon, together with a statement showing the amount then due, does not satisfy the statute as amended in 1896. The attempts to comply with the statute doubtless operated as notice of the continuing existence of the mortgage to such creditors as may have examined the records of the office, but they could have no other effect. They were not intended to revive a defunct mortgage, and, if they had been, would have been unavailing for that purpose.

It remains to consider whether the trustee can take advantage of the noncompliance with the statute. It has always been held by the courts of New York that only such creditors can take advantage of it as are armed with some legal process authorizing the seizure of the mortgaged property, and are thereby in a position to enforce a lien upon it (Jones v. Graham, 77 N. Y. 628; Button v. Rathbone, 126 N. Y. 187, 27 N. E. 266; Stephens v. Britannia Co., 160 N. Y. 178, 181, 54 N. E. 781), and that the mortgage is good as to creditors at large as well as between the parties. Under the bankruptcy act of 1867 (14 Stat. 517), a failure to file a mortgage of goods and chattels in the manner prescribed by the law of the state, while rendering the mortgage void as against the creditors of the mortgagor if it was not accompanied by an immediate delivery and followed by an actual and continuous possession of the chattels, did not affect its validity as against the assignee of the mortgagor in bankruptcy. The assignee succeeded merely to the title of the mortgagor, and as between the mortgagor and the mortgagee the validity of the mortgage was unaffected by the failure. Stewart v. Platt, 101 U. S. 731, 25 L. Ed. 816. Under the present act, however, by section 67, "claims which for want of record or for other reasons would not have been valid liens as against the claims of the creditors of the bankrupt" are not liens against his estate (subdivision "a"), and by subdivision "b," whenever a creditor is "prevented from enforcing his rights against a lien created or attempted to be created by his debtor, who afterwards becomes a bankrupt," the trustee of the estate is subrogated to and may enforce the rights of such creditor for the benefit of the estate. And by section 70 (subd. "e") "the trustee may avoid any transfer by the bankrupt of his property which any creditor of

such bankrupt might have avoided." When the mortgagor was adjudicated a bankrupt, there was, so far as appears, but one judgment creditor. Whether any other creditor could have eventually entitled himself to the benefit of the statute was a matter of mere conjecture. It would have depended not only upon his own vigilance in pursuing his legal rights, but also upon the volition of the mortgagor. The mortgagor could have made a general assignment of its property for the benefit of its creditors, or surrendered possession of the mortgaged property to the mortgagee; and in either event the right of all creditors to impeach the lien would have been extinguished. Sheldon v. Wickham, 161 N. Y. 500, 506, 55 N. E. 1045; Bowdish v. Page, 153 N. Y. 104, 47 N. E. 44.

The bankrupt act does not vest the trustee with any better right or title to the bankrupt's property than belongs to the bankrupt or to his creditors at the time when the trustee's title accrues. The present act, like all preceding bankrupt acts, contemplates that a lien good at that time as against the debtor and as against all of his creditors shall remain undisturbed. If it is one which has been obtained in contravention of some provision of the act, which is fraudulent as to creditors, or invalid as to creditors for want of record, it is invalid as to the trustee; and if it is one which was invalid as to some particular creditor, though valid as to other creditors, the trustee is in certain cases subrogated to the rights of that creditor. The provisions which have been quoted do not necessarily touch a lien which at the date of the adjudication of bankruptcy was valid as to the bankrupt, and could not then be disturbed by any of his creditors. The lien of the present mortgage "would not have been valid as against the claims of the creditors," within the terms of subdivision "a," if the creditors had obtained the right to question it; but otherwise it was valid. A similar question was considered by Mr. Justice Hunt in Re Collins, 12 Blatchf. 552, Fed. Cas. No. 3,007. That case arose under the act of 1867, which, as he construed it, authorized an assignee in bankruptcy to contest the validity of any lien which the creditors might have challenged; but, placing that construction upon the act, he was of the opinion that the assignee could not contest a mortgage invalid for want of proper filing, because the assignee did not represent any creditor who had obtained, by judgment or otherwise, a specific lien upon the property. Subdivision "b," § 67 (Act of 1898), preserves for the benefit of the estate in bankruptcy a right which some particular creditor has been prevented from enforcing by the intervention of the debtor's bankruptcy. If a creditor, by an execution or a creditors' bill, has secured a legal or equitable lien upon the mortgaged property before the mortgagor has been adjudicated a bankrupt, under this provision his rights will or will not inure to the benefit of the estate, depending upon the time when the lien was acquired. If acquired more than four months before the commencement of the bankruptcy proceeding, his lien would inure to his own exclusive benefit; but, if acquired at any time within the four months, it would be null and void, under subdivision "f" of the section, except as preserved for the benefit of the estate as provided in that subdivision and in subdivision "b." Sub-

division "e," like the other provisions, does not authorize the trustee to avoid a transfer unless some creditor might have avoided it. We think these provisions ought not to be extended by construction to cover cases which are not distinctly within their terms, for the purpose of subverting liens which have originated in good faith, which have remained unchallenged at the time of the commencement of the bankruptcy proceeding, and which no creditor of the bankrupt could ever have attacked successfully except at the option of the debtor. We conclude that, except as to the Reilly judgment, the lien of the mortgage was valid, and that the trustee is entitled only to the amount of that judgment out of the proceeds in the registry of the court.

We have not overlooked the point made by the trustee that the mortgage was invalid because the consents of the stockholders of the mortgagor had not been filed in the office of the proper official, as required by the provisions of the stock corporation law. These provisions are for the protection of stockholders, and only stockholders can take advantage of any defects in complying with them. Bank v. Averell, 96 N. Y. 467, 475; Paulding v. Steel Co., 94 N. Y. 334.

The order of the court below should be modified conformably with this opinion, and it is accordingly reversed, with instructions to so modify it.