### In re BEEDE.

(District Court, N. D. New York. December 29, 1903.)

1. CHATTEL MORTGAGE—SUFFICIENCY OF DESCRIPTION.

A chattel mortgage describing all the property of the mortgagor of certain kinds "now being and remaining" in his possession is sufficient.

2. SAME—UNRECORDED MORTGAGE—RIGHTS OF CREDITORS UNDER NEW YORK STATUTE.

The statute of New York which provides that every chattel mortgage which shall not be accompanied by an immediate delivery and be followed by an actual and continued change of possession of the things mortgaged "shall be absolutely void as against the creditors of the mortgagor and as against subsequent purchasers and mortgagees in good faith," unless it shall be filed, etc., as construed by the state Court of Appeals, does not render an unfiled mortgage void as to general creditors, but only as against creditors who have reduced their claims to judgment, and had execution issued thereon; but one who was a general creditor during the time the mortgage remained unfiled may assert its invalidity on obtaining judgment and execution, although it has been filed in the meantime, such judgment and execution not being essential to his right, but to its enforcement only.

3. BANKRUPTCY—VALIDITY OF LIENS—CREDITORS ENTITLED TO CONTEST.

It being the law of New York that general creditors of the mortgagor may impeach the validity of a chattel mortgage for nonfiling, as against the mortgagee, at any time when they obtain judgment and execution, unless the mortgagor has previously sold and delivered the property to the mortgagee in payment of the debt, where property of a bankrupt, which came into the possession of his trustee and was sold by him, was subject to a chattel mortgage given by the bankrupt more than four months prior to the bankruptcy, but not filed until immediately before, and where general creditors obtained judgments against the bankrupt after the adjudication, such creditors are entitled to be heard before the proceeds of the mortgaged property are adjudged to the mortgagee, and are necessary parties to any proceeding for that purpose, under the ruling of the Circuit Court of Appeals that the trustee cannot question the validity of the mortgage in their right.

In Bankruptcy. The questions here are whether the trustee took title to the personal property of the bankrupt subject to the lien of a chattel mortgage thereon, or free and clear of same; and, if such property was subject to the lien of the mortgage, the amount thereof. Also, can creditors who were general creditors when the petition was filed and the adjudication made, but who have since perfected

¶ 2. See Chattel Mortgages, vol. 9, Cent. Dig. §§ 432, 435.

judgments against the bankrupt, assert their judgments against the mortgagee?

Stokes & Owen, for trustee.
S. L. Wheeler, for John M. Wever.

RAY, District Judge. Orlando Beede, the bankrupt, was engaged in the business of lumbering and running two stores. Prior to March 23, 1901, he had become heavily involved, and had called on his brother Fletcher S. Beede for help by way of indorsements, etc. This brother agreed to indorse his paper, but stated that he ought to have and wanted security, and Orlando promised to give him security, but no agreement was made as to its form or nature. Fletcher S. Beede then and thereafter, and before the mortgage in question was given, indorsed notes and gave accommodation notes for the benefit of his brother to the amount of $30,000 and upwards. Notes and checks of Orlando had gone to protest, and he knew he was financially involved, and unable to meet his obligations as they fell due, but it is not shown he actually figured up and ascertained his true financial condition. He knew what his property consisted of, and substantially its value. He knew approximately the amount of his indebtedness, and must have had cause and reason to believe himself insolvent, as his indebtedness was nearly double the value of his property. From time to time, commencing in April, 1901, judgments, some large and some small, had been obtained against Orlando, and it would seem from the evidence that the sheriff had levied on personal property of Orlando from time to time while the mortgage remained unfiled. The brother Fletcher S. Beede was not acquainted with the financial condition of Orlando. Apparently Orlando was doing a good business and making money. He had a large amount of property, real and personal, apparently free of incumbrance, and stated to Fletcher S. Beede that he was doing a good business and making money. He did know of protested notes owing by Orlando before the mortgage was given. On the 23d day of March, 1901, in pursuance of his promise to give security, Orlando executed and delivered to his brother Fletcher a chattel mortgage in the words and figures following:

"To all to whom these presents shall come, Greeting: Know ye, that I, Orlando Beede, of the town of Keene, County of Essex & State of N. Y., am indebted unto Fletcher S. Beede, of the same town, County & State, in the sum of thirty thousand dollars and —— cents, being for money and notes advanced to me at various times.

"Now for securing the payment of the said debt and interest from the date hereof, to the said Fletcher S. Beede, I do hereby sell, assign, and transfer to the said Fletcher S. Beede, all the goods, chattels and property described in the following schedule, viz.:

"90 horses, all wagons, sleds, sleighs carriages stages, including lumber sleds chains & implements lumber tools, harness and vehicles of any and all description. All cows hogs and cattle blacksmith tools & appurtenances stock of goods in stores at Wadhams Mills and Beedes, N. Y. Furniture at New Pond Inn, Underwood N. Y. Stock of hay and grain at Wadham Mills and Beedes, N. Y. Also at my farm, Keene, N. Y., together with all farming implements, &c. Said property now being and remaining in the possession of Orlando Beede.

"Provided always, and this mortgage is on the express condition, that if the said Orlando Beede shall pay to the said Fletcher S. Beede, the sum of thirty thousand dollars with interest as follows, viz.: to be paid within one year from date which said sum and interest the said Orlando Beede hereby covenant to pay, then this transfer to be void and of no effect; but in case of non-payment of the said sum at the time or times above mentioned, together with interest, then the said Fletcher S. Beede shall have full power and authority to enter upon the premises of the said party of the first part, or any other place or places where the goods and chattels aforesaid may be, to take possession of said property, to sell the same, and the avails (after deducting all expenses of the sale and keeping of the said property) to apply in payment of the debt and in case the said Fletcher S. Beede shall at any time deem this debt unsafe, it shall be lawful for him to take possession of such property, and to sell the same at public or private sale, previous to the time above mentioned, for the payment of said debt, apply the proceeds as aforesaid, after deducting all expenses of the sale and keeping of the said property. If from any cause said property shall fail to satisfy said debt, interest, costs and charges, the said Orlando Beede covenants and agrees to pay the deficiency.

"In Witness Whereof I have hereunto set my hand and seal the 23rd day of March in the year of our Lord one thousand nine hundred and ———— 1901.
"Sealed and delivered                                      Orlando Beede.
"In the presence of Thos. W. Murihead.

"County of Essex—ss.: On this 23rd day of Mch., 1901, before me came Orlando Beede to me known to be the person described in and who executed the foregoing instrument and who acknowledged that he executed the same.
                                        "Wm. F. Bailey,
                                              "Notary Public,
                                                  "Mar. 23, 1901."

This mortgage was not filed until October 11, 1901, the day before Orlando was adjudged a bankrupt on his own petition. On that day it was filed in the office of the town clerk of the town of Westport, where the mortgagor resided. This chattel mortgage covered substantially all the personal property owned by the mortgagor. It is not shown that it was kept from the files pursuant to any agreement to that effect, or with any actual fraudulent intent. It was understood between the parties thereto that Orlando was to continue to sell and dispose of the property as his own, but the mortgagee told the mortgagor to keep an account of it, and hold the proceeds for him. This he did not do. The mortgagor continued to sell and dispose of the mortgaged property in the usual course of business, but kept no account of such sales; nor did he hold for or turn over to the mortgagee any part of the proceeds, nor was he at any time called upon to account therefor.

October 12, 1901, on his own petition, Orlando Beede was duly adjudged a bankrupt, and thereafter a trustee was duly appointed. At the time of the adjudication the bankrupt was in possession of the mortgaged property (not disposed of by the mortgagor), and same was thereafter sold by the trustee for the sum of $12,806.34, under an agreement that the lien of the mortgage, if any, should attach to the proceeds of such sale, which were to stand in place of the property itself. Prior to the time Orlando Beede was adjudged a bankrupt, judgments in favor of different creditors, to the amount of $5,943.85, had been duly obtained and docketed against him, and remained unpaid at the date of adjudication. October 12th a judgment for $5,494.26 was obtained and docketed against said Orlando

Beede in favor of Daniel F. Payne, and thereafter judgments to the amount of $7,648.31 were duly obtained and docketed against said bankrupt in favor of divers parties. There are other creditors of the bankrupt.

January 17, 1902, the Daniel F. Payne judgment was assigned to Samuel L. Wheeler; and December 13, 1901, the Citizens' National Bank of Port Henry duly assigned their judgments, amounting to $3,284.46, and obtained prior to the adjudication, to said Wheeler. On the hearing and in open court said Samuel L. Wheeler, as assignee of said judgments, stated as follows:.

"I waive all claim, as owner of the assignments of three judgments which I have offered in evidence, to the chattel mortgage put in evidence being void from want of timely filing."

After the chattel mortgage was given, and before the adjudication, Orlando gave to Fletcher S. two bills of sale of certain of this personal property, but no part of the property was delivered. No claim is made under them. They bore date August 21, and September 2, 1901, respectively, within four months of the adjudication.

April 11, 1902, about six months after the adjudication, Fletcher S. Beede, by an instrument in writing under seal, and duly acknowledged, executed and delivered to the claimant here, John M. Wever, an assignment of said chattel mortgage and of said bills of sale as collateral security for the payment of a certain real estate mortgage for $7,500 made by said Fletcher S. Beede and wife on the 11th day of April, 1902, to said John M. Wever; and such assignment recites, "To have and to hold the same to the said John M. Wever, his executors, administrators and assigns, so far as may be necessary for the purpose of such security;" the remainder, if any, to be paid over to Fletcher S. Beede. John M. Wever claims $7,500 of the proceeds of such sale of such personal property by virtue of this chattel mortgage and the assignment thereof.

It is urged by the trustee that knowledge of the protested notes gave Fletcher notice of the insolvency of Orlando. This court cannot hold that the evidence is sufficient to establish that the mortgagee had reason to believe the mortgagor insolvent at the time the mortgage was given.

Nor can this court hold that there was any agreement that the mortgagor should sell the mortgaged property for his own benefit, and apply the proceeds to his own use. True, this was done, but it was in violation of the agreement made. Even were it shown that the mortgagee knew the mortgagor was not holding the proceeds for him as he had agreed to do, still, as the mortgagee had become indorser to a large amount, and must have learned in the summer and fall after the mortgage was given that the mortgagor was heavily involved and hard pressed, it may be that he preferred to have the proceeds applied to the satisfaction of the debts of the mortgagor. This would not make the mortgage void as to creditors.

It is claimed that the description of the mortgaged property is so indefinite and uncertain that it is void. The cases cited do not sustain this contention. The description does not refer to a certain number of a larger number of animals, or of articles with nothing to identify which are mortgaged and which not, but purports to cover all, and

describes it as the property "now being and remaining in the possession of Orlando Beede."

Coming to the question of the nonfiling of the chattel mortgage, the evidence does not establish an agreement to keep it from the files, or to keep it secret. An unfiled chattel mortgage is not presumed to be fraudulent as to creditors. The nonfiling raises no presumption of fraud. Sheldon v. Wickham, 161 N. Y. 500, 55 N. E. 1045. By statute, it is void as to creditors and bona fide purchasers, but it is now settled by the Court of Appeals of the state of New York (and its decisions must govern this court in this case on this question) that, notwithstanding the plain and unequivocal language of the statute:

"Every mortgage, or conveyance intended to operate as a mortgage of goods and chattels hereafter made, which shall not be accompanied by an immediate delivery and be followed by an actual and continued change of possession of the things mortgaged, shall be absolutely void as against the creditors of the mortgagor, and as against subsequent purchasers and mortgagees in good faith, unless the mortgage, or a true copy thereof, shall be filed," etc. Laws 1833, p. 402, c. 279, § 1.

—An unfiled chattel mortgage is good and valid as to general creditors (Stephens v. Meriden Britannia Co., 160 N. Y. 178, 54 N. E. 781, 73 Am. St. Rep. 678), and that only creditors who come armed with a judgment and execution can avail themselves of the statute; and this notwithstanding the fact that the statute makes no reference to judgment creditors, and also notwithstanding the earlier decision of the same court in Karst v. Gane, 136 N. Y. 316, 32 N. E. 1073 (approved Stephens v. Perrine, 143 N. Y. 476–481, 39 N. E. 11), where it was held by an undivided court (Maynard, J., not voting) that:

"The word 'creditors' in the provision of the act of 1833 (section 1, c. 279, p. 402, Laws 1833) in reference to the filing of chattel mortgages, which provides that such a mortgage, unless filed as directed by the act, 'shall be absolutely void as against the creditors of the mortgagor,' includes creditors whose debts antedate the execution of the mortgage, as well as those whose debts were subsequently contracted. A simple-contract creditor is also as much within the protection of the statute as a creditor whose debt has been merged in a judgment. Such a mortgage, therefore, is not valid as against an antecedent creditor, although it was filed before the creditor acquired a lien upon the property by judgment and execution."

It is true that in Karst v. Gane, supra, it was conceded that the mortgaged property remained in the possession of the mortgagors until taken by the sheriff under the execution in favor of the judgment creditor (see page 318, 136 N. Y., page 1075, 32 N. E.), but the court said:

"A simple-contract creditor is as much within the protection of the statute as a creditor whose debt has been merged in a judgment. This was held in Southard v. Benner, 72 N. Y. 424, in respect to the meaning of the word 'creditors' in the section of the Revised Statutes relating to fraudulent sales, assignments, or mortgages of goods and chattels. The same point was adjudged as to the meaning of the same word in the statute of 1833 [Laws 1833, p. 402, c. 279] in the case of Thompson v. Van Vechten [27 N. Y. 568]. There was a question in that case of priority of lien as between the Shaw mortgage, and the levy of an execution on a judgment in favor of the Westchester County Bank, recovered March 16, 1855, upon a debt which arose June 10, 1854,

during the time when the omission to file the mortgage existed. Judge Denio, writing the opinion, referring to the argument that the word 'creditors,' in the statute of 1833, embraces only creditors who obtain judgment and execution during the default in filing the mortgage, said that if this were so the act would not in many cases accomplish any beneficial purpose. The mortgage, he observed, cannot be legally questioned until the creditor clothes himself with a judgment and execution, or with some legal process against the property, for creditors cannot interfere with the property of the debtor without process. See, also, Southard v. Benner, supra. The simple-contract creditor runs the risk of having his remedy to assail the mortgage defeated by a bona fide transfer of the property by the mortgagor to the mortgagee in payment of the mortgage, before he has obtained judgment and execution, or any lien on the property. Kitchen v. Lowery, 127 N. Y. 59 [27 N. E. 357]."

The court in that case also held:

"The mortgage was, however, filed before the plaintiff's judgments and executions were obtained. This did not restore the validity of the mortgage as against creditors whose debts were in existence during the default in filing the mortgage, although judgments or executions were not obtained until after the mortgage was in fact filed. This was also one of the points decided in Thompson v. Van Vechten, supra, in awarding priority to the Westchester County Bank judgment over the Shaw mortgage."

In Stephens v. Perrine, 143 N. Y. 476, 39 N. E. 11, the court held:

"A failure to file a chattel mortgage, where there is no change of possession of the mortgaged property, renders it void as to then existing creditors of the mortgagor, and the mortgagee cannot thereafter acquire title to property by taking possession and selling the same under the mortgage, and bidding it off on the sale; and this although the mortgage was given in good faith to secure an actual indebtedness."

And the court in the opinion (all concurring) said:

"The Supreme Court has reversed the judgment for plaintiff upon the ground that although such mortgage was void even as to existing creditors, yet, as the mortgagee filed her mortgage, and under it took possession of ·the property mortgaged, and sold the same by virtue of it before the creditors represented by the plaintiff had obtained any lien on the property by judgment and execution, or by some other legal process, the mortgagee had the right to hold such property or its proceeds against these creditors. The court stated that the creditors, in order to take advantage of this void mortgage by reason of a failure to file it, must not only acquire a lien upon the property by virtue of a levy or other legal process, but such lien must be had before the mortgagee has reduced the property to possession and sold it to satisfy his claim. In this holding we are of the opinion the court below erred. The mortgage, as to the creditors of the mortgagor, was always void. It continued to be void notwithstanding the fact that the mortgagee assumed to take possession under, and to sell the property by virtue of, such void instrument. As between these mortgagors and creditors, it was the same as if the mortgage did not exist; and the mortgagee could not, as against these creditors, obtain any rights under it. How could a mortgagee in a void mortgage as against creditors obtain any title to property by virtue of such mortgage? As against them, the mortgagee could not rightfully take the property by virtue of this void instrument; and, if she did take it in spite of the fact that the mortgage was void and no protection to her, how could she secure any further or greater right by the sale of the property and the receipt of its value? This action is against the mortgagee, and I cannot see the force of the reasoning which, while admitting that the mortgage is void as to creditors, nevertheless asserts that a title to the property covered by it may be obtained by the mortgagee by proceedings taken under it, and which assert the validity of such instrument, provided they are taken before the creditors are armed with a judgment and execution so as to enforce their rights which

rest upon the invalidity of the mortgage. If void, what right has the mortgagee, as against creditors, to take possession in her character of mortgagee, and to sell or dispose of property described in it? Clearly, she has none, and she does not acquire any by the celerity of her movements in seizing and selling property under it. Although, in order to themselves take the property, it was necessary for the creditors to have some legal process, yet, when that condition was complied with, their right to take it as between these parties became perfect. If, before any lien had been acquired by the creditors, the mortgagors had delivered the property to the mortgagee in payment of her debt, she could have then held it, because it would have been, in such a case, a transfer of property by them in payment of their debt; and, although it would have been in fact preferring such debt, yet it would have been a preference which the mortgagors then had the right to make. But in this case there was nothing of the kind done. The mortgagee acted under and by virtue of her mortgage all the time. The mortgagors did not deliver the property to her in payment of her debt. She took it under the assumed right given by the mortgage. The language of Chief Justice Andrews in Karst v. Gane, supra, gives no countenance to the claim made in this case. He there said: 'The simple-contract creditor runs the risk of having his remedy to assail the mortgage defeated by a bona fide transfer of the property by the mortgagor to the mortgagee in payment of the mortgage before he has obtained judgment and execution, or any lien on the property.' This statement is perfectly true, but is no justification for the claim that the mortgagee can herself defeat these creditors by taking possession of the property under a mortgage which as to them is nonexistent."

In Stephens v. Meriden Britannia Co., 160 N. Y. 178, 54 N. E. 781, 73 Am. St. Rep. 678, the court held:

"(1) Chattel Mortgage—Status of Unfiled Instrument. While a chattel mortgage, which was neither filed as required by law, nor accompanied by an immediate delivery, followed by an actual and continued change of possession, of the property mortgaged, is void as against judgment creditors of the mortgagor, it is good as between the parties thereto, and as against creditors at large.

"(2) Receiver in Supplementary Proceedings—Inability to Maintain Action at Law for Property of Judgment Debtor Sold under Irregular Chattel Mortgage before Recovery of Judgment Creditor's Judgment. A receiver in proceedings supplementary to execution has no power to maintain an action at law for property, or the proceeds of property, of the debtor, taken and sold by the mortgagee under a chattel mortgage made by the debtor, but which was neither filed when given, nor accompanied by an immediate change of possession, where the taking and sale of the mortgaged property were consummated before the appointment of the receiver, or the recovery of the judgment on which he was appointed, and at the time of the execution of the mortgage and of the sale the creditor represented by the receiver was a general creditor of the mortgagor, having no attachment or judgment.

"(3) Remedy in Equity. In such a case the receiver's remedy is by an action in equity to set aside the transfer of the debtor's property, if it was in fraud of creditors.

"(4) Receivers' Statutory Powers. The act 'to declare and extend the powers of executors, assignees, receivers, and other trustees' (Laws 1858, p. 506, c. 314; Laws 1894, p. 1843, c. 740) does not apply to receivers appointed in proceedings supplementary to execution."

Bartlett, J., dissented, and cited and quoted from Mandeville v. Avery, 124 N. Y. 376, 26 N. E. 951, 21 Am. St. Rep. 678, where the court held:

"A chattel mortgage not accompanied by immediate delivery, or followed by an actual or continued change of possession, of the chattels mortgaged, and which was executed upon an agreement that the mortgagor may remain in possession and sell the property and use the avails in substantially the same manner as before the execution of the mortgage, is void as against the

creditors of the mortgagor. The term 'creditors' includes all persons who were such while the chattels remained in the possession of the mortgagor under the agreement, and their rights are not affected by the fact that they did not obtain judgment or a specific lien until after delivery of the property to the mortgagee. The right of the creditor to collect his debt out of the mortgaged chattels may not be defeated by the mortgagee, simply by selling the property. * * * A receiver appointed in supplementary proceedings under the Code of Civil Procedure is vested with the legal title to all the personal property of the judgment debtor. He also represents the creditor under whose judgment he was appointed, and has the same right the creditor possesses to prosecute actions to set aside all transfers of property made by the debtor to defraud his creditors. The rights of the receiver in this respect are not confined to the property fraudulently assigned. He may follow the proceeds of the sale thereof in the possession of any person not a bona fide owner or holder."

In Sheldon v. Wickham, 161 N. Y. 500, 55 N. E. 1045, the headnote is as follows:

"Chattel Mortgage—Failure to File—Right of Assignee for the Benefit of Creditors to Take Advantage of—Laws 1858, p. 506, c. 314. An assignee for the benefit of creditors cannot, in an action to foreclose a mortgage, covering both real and personal property, executed by the assignor prior to the assignment, when there is no claim of fraud in the transaction, avail himself of the defense that the mortgage is void as to the personal property, because not filed as a mortgage of chattels, as an unfiled chattel mortgage cannot be treated as a transfer of property in fraud of the rights of creditors, and therefore does not fall within chapter 314 of the Laws of 1858, permitting assignees to disaffirm and treat as void transfers in 'fraud' of the rights of creditors, without having such claims established by a judgment."

The court, in the opinion (all concurring; Bartlett in the result), said:

"As we have seen, the instrument now sought to be foreclosed was a mortgage upon both real and personal property, and the question presented on this review is whether it is void as to the personal property by reason of the failure of the plaintiff to file it as a mortgage of chattels. Under the statute, 'Every mortgage, or conveyance intended to operate as a mortgage of goods and chattels hereafter made, which shall not be accompanied by an immediate delivery and be followed by an actual and continued change of possession of the things mortgaged, shall be absolutely void as against the creditors of the mortgagor, and as against subsequent purchasers and mortgagees in good faith, unless the mortgage, or a true copy thereof, shall be filed,' etc. Laws 1833, p. 402, c. 279, § 1. It has been repeatedly held that such a mortgage is only void as to the persons mentioned in the statute, to wit, purchasers in good faith, and creditors who are armed with some legal process authorizing a seizure of the property, and that it is valid as to the mortgagor and all other persons. The mortgagor, in assigning his property to the defendant Hillis, could not transfer to him any greater right with reference to this property than he theretofore possessed; and, if the mortgage was valid as to him, it followed that it was valid as to his assignee. This was expressly held in this court as early as the case of Van Heusen v. Radcliff, 17 N. Y. 580 [72 Am. Dec. 480], and the same principle has been since repeatedly asserted in numerous cases."

The court then holds—citing numerous cases—that an unfiled chattel mortgage, because not filed, cannot be set aside as fraudulent as to creditors, the statute merely declaring it void.

Assuming that an unfiled chattel mortgage is not fraudulent as to creditors, whether judgment creditors or only general creditors, we are led to inquire who may take advantage of the nonfiling of the

mortgage as required by the statute. Judgment creditors—that is, creditors armed with judgment and execution issued before the mortgagor has passed title and delivered the possession to the mortgagee—may levy on and sell the property notwithstanding the mortgage, and take it or recover the proceeds from the mortgagee, if he takes it under his mortgage, for as to such creditors the mortgage is absolutely void. If the debt is incurred and falls due during the time the mortgage remains unfiled, may the mortgagee, by filing it, prevent those who were general creditors only before such filing from obtaining judgment, issuing execution, and obtaining a lien superior to the mortgagee?

In Sheldon v. Wickham, 161 N. Y. 500, 55 N. E. 1045, the question was between the mortgagee and the assignee for the benefit of creditors of the mortgagor—the claims of creditors not having been reduced to judgment—and the court held the assignee could not defeat foreclosure by the mortgagee; that the defense of nonfiling was not available to him.

In Stephens v. Meriden Britannia Co., 160 N. Y. 178, 54 N. E. 781, 73 Am. St. Rep. 678, the action was at law for conversion, brought by the receiver in supplementary proceedings of the property of the mortgagor, appointed on the return of execution unsatisfied, issued on a judgment obtained by one Logan after the mortgagee in a mortgage given November 19, 1892, and not filed until December 7, 1892, had taken possession of and sold the mortgaged property by virtue of the mortgage against such mortgagee. It was held that such receiver could not maintain the action at law; that the mortgage was not fraudulent as to creditors or as to the mortgagor, and the title to the property never passed to the receiver. The court said (page 181, 160 N. Y., page 782, 54 N. E., 73 Am. St. Rep. 678):

"Upon the recovery of judgment and the return of execution unsatisfied, Mr. Logan was still without power to maintain an action at law; but he then could have upheld a suit in equity to set aside the transfer, so far as it was an obstruction to the collection of his debt."

Nothing in the case indicates that the judgment must be obtained and execution issued prior to the filing of the mortgage and the taking of possession by the mortgagee under his mortgage not filed as required by the statute.

In Castleman v. Mayer, 168 N. Y. 354, 61 N. E. 282, the headnote is as follows:

"Chattel Mortgage—When Unfiled Instrument not Void as Against Creditors of Mortgagor. Where a chattel mortgage was given to secure advances, but not filed until after the mortgaged property, with the consent of the mortgagor, was delivered by the mortgagee to a sheriff to be sold under the mortgage, and the property was sold and the proceeds turned over to the mortgagee prior to the rendition of judgments against the mortgagor upon which an action for the benefit of the judgment creditors is based, such mortgage must be held valid in the Court of Appeals, and not void as against the existing creditors of the mortgagor, when there is some evidence to support a finding of the trial court, affirmed by the Appellate Division, that the execution and delivery of the mortgage were accompanied by an immediate delivery of the property to the mortgagee, and followed by actual and continued possession thereof by him, without any fraudulent intent on the part of either mortgagor or mortgagee to defraud the creditors of the mortgagor."

In the opinion the court says:

"This finding has some evidence in its support, and hence we must treat it as conclusively established that the possession of the property covered by the mortgage was duly transferred to the mortgagee at the time of the execution of that instrument, and that he thereafter continued in possession."

The question of filing therefore became of no importance.

In Mandeville v. Avery, 124 N. Y. 376, 26 N. E. 951, 21 Am. St. Rep. 678, the court expressly held:

"And the term 'creditors' includes all persons who were such while the chattels remained in possession of the mortgagor under that agreement, and it was not essential to their rights that they did not obtain judgment or a specific lien until after delivery of the property to the mortgagee."

Stimson et al. v. Wrigley, 86 N. Y. 332, has some bearing on this question.

In Karst v. Gane, 136 N. Y. 316, 32 N. E. 1073, the chattel mortgage was dated September 25, 1889, and filed November 7, 1889, while the judgments were not obtained until January, 1890. Held:

"The mortgage was, however, filed before the plaintiff's judgments and executions were obtained. This did not restore the validity of the mortgage as against creditors whose debts were in existence during the default in filing the mortgage, although judgments or executions were not obtained until after the mortgage was in fact filed. This was also one of the points decided in Thompson v. Van Vechten, 27 N. Y. 568, in awarding priority to the Westchester County Bank judgment over the Shaw mortgage."

In Stephens v. Perrine, 143 N. Y. 476, 39 N. E. 11, the mortgage was given February 25, 1892, and filed March 30, 1892. Judgments were not obtained until after the filing of the mortgage. This was held to make no difference.

In the case now before this court the chattel mortgage was filed the day before the bankrupt filed his petition and was adjudicated a bankrupt. The filing of this petition operated as a caveat to all the world, and as an attachment of all the bankrupt's property for the benefit of all his creditors. The mortgagee had not taken possession of the property, and it had not been surrendered to him by the mortgagor. The trustee took title to the property subject to the rights and claims of creditors, and one of the rights of creditors was to reduce their demand to judgment and assert the invalidity of the mortgage. Several judgments to the amount of $5,943.85, as stated, had been obtained and were unpaid at that date; and several others, to the amount of $7,648.31, were obtained and perfected within 20 days thereafter. The title of the trustee when appointed related back to the date of the adjudication, but he took title subject to the lien of the mortgagee, so far as his lien was valid, and subject to the rights of general creditors to have the property applied to the payment of their debts or claims. When the law vested title in the trustee, it gave him the same title the bankrupt had—no greater, no less.

There is no presumption that the mortgagor would have delivered possession to the mortgagee in payment of the mortgage debt before these judgments were perfected, or that the mortgagee would have taken possession. These creditors whose judgments were perfected after the adjudication were proceeding with due diligence to perfect

and docket their judgments, and they were not enjoined, and did perfect them. True, the title to the property passed to the trustee as of the date of adjudication, and before these later judgments were obtained; but is it true that the bankrupt, the mortgagor, by filing a petition in voluntary bankruptcy, deprived these creditors of rights they had to put their claims in judgments, and seize this property and apply it in satisfaction thereof, notwithstanding the chattel mortgage (and which rights they perfected so far as possible), as against the mortgagee, the assignor of Wever, and which mortgage would have become absolutely void as to them, because not filed as required by law, the moment they secured judgments and issued executions?

Is it true that the mortgagor, by filing his petition and being adjudicated a bankrupt, gave validity to this chattel mortgage in favor of the mortgagee who did not comply with the statute, as against these creditors who were reducing their claims to judgments, and which mortgage, as to them, was void for nonfiling, or would have became void the moment the judgments were perfected and executions issued? True, the adjudication prevented them from issuing execution and levying on the property; but did it destroy their rights to assert the invalidity of the mortgage, when they should have secured judgments and executions, and, in effect, confer title on the mortgagee by making his mortgage good as against them, he not having complied with the statute? The mortgagee could not hold the mortgaged property, as against these creditors now armed with judgments, had the petition not been filed and the adjudication made. Is the filing of a petition in voluntary bankruptcy by a mortgagor, followed by adjudication, equivalent to handing the property over to the mortgagee in payment of the mortgage debt?

It should be kept in mind that the right of the creditors to assail and assert the invalidity of the chattel mortgage was perfect. That right grew out of the nonfiling. Their claims accrued during the default in filing the mortgage, and, as to them, it was so far invalid that they could assert its invalidity by seizing the property so soon as judgments were obtained and executions issued. As preliminary to action in seizing the property, and as a step in asserting and enforcing their rights, they must secure judgments and executions. But when such judgments were obtained and executions issued, the right to take the property or recover its value from any one but a bona fide purchaser for value was complete. The intervention of the bankruptcy proceedings prevented these creditors from enforcing their rights in the state courts, viz., to secure judgment and execution, and seize and sell this property in satisfaction thereof, as against a lien attempted to be created by their debtor, the bankrupt. The case is squarely within the provisions of section 67 of the bankruptcy law (subdivisions "a" and "b", and subdivision "e" of section 70, Act July 1, 1898, c. 541, 30 Stat. 564, 565 [U. S. Comp. St. 1901, pp. 3449, 3451]), which were enacted to cover this class of cases, and the trustee ought to be able to enforce these claims for the benefit of the estate. Those provisions are as follows:

"Sec. 67. Liens. (a) Claims which for want of record or for other reasons would not have been valid liens as against the claims of the creditors of the

bankrupt shall not be liens against his estate. (b) Whenever a creditor is prevented from enforcing his rights as against a lien created, or attempted to be created, by his debtor, who afterwards becomes a bankrupt, the trustee of the estate of such bankrupt shall be subrogated to and may enforce such rights of such creditor for the benefit of the estate."

"Sec. 70. Title to Property. (a) The trustee of the estate of a bankrupt, upon his appointment and qualification, and his successor or successors, if he shall have one or more, upon his or their appointment and qualification shall in turn be vested by operation of law with the title of the bankrupt, as of the date he was adjudged a bankrupt, except in so far as it is to property which is exempt, to all * * * (5) property which prior to the filing of the petition he could by any means have transferred or which might have been levied upon and sold under judicial process against him. * * * (e) The trustee may avoid any transfer by the bankrupt of his property which any creditor of such bankrupt might have avoided, and may recover the property so transferred, or its value, from the person to whom it was transferred, unless he was a bona fide holder for value prior to the date of the adjudication. Such property may be recovered or its value collected from whoever may have received it, except a bona fide holder for value. For the purpose of such recovery any court of bankruptcy as hereinbefore defined, and any state court which would have had jurisdiction if bankruptcy had not intervened, shall have concurrent jurisdiction."

True, the mortgagor might have sold the property to a bona fide purchaser, or might have sold it to the mortgagee in payment of his claims, before judgment and execution, but he did not; and the claims and rights and remedies of creditors, as against the mortgagee, who did not comply with the law, should not be defeated on the theory that the mortgagor had it in his power to defeat these creditors in their attempt to assert rights in existence as against the mortgagee, who had not complied with the law by filing his mortgage.

Can it be doubted that this property in question was "property which prior to the filing of the petition he [the bankrupt] could by any means have transferred," or that it was property "which might have been levied upon and sold under judicial process against him?" Might not these creditors now armed with judgments have avoided this chattel mortgage, because not filed, on perfecting judgment and issuing execution, and were they not prevented by the interposition of the bankruptcy proceedings from enforcing their rights to proceed to judgment, issue execution, and levy on this property? If all this be true, the trustee may assert the invalidity of this mortgage, for nonfiling, for the benefit of the estate. If this is not true, then the rights of these creditors who have obtained judgment since the adjudication in bankruptcy are not interfered with by the bankruptcy law, and it is a question between them and the mortgagee or his assignee, Wever, with which the trustee has nothing whatever to do. That the property passed to the trustee in bankruptcy as of the date of adjudication cannot be doubted. It was property owned by the bankrupt. He had mortgaged it, but he had not sold it. He had not turned it over to the mortgagee or to any other person. The trustee took title subject to the rights of the mortgagee, but the rights of the mortgagee were and still are subject to the rights of these general creditors who have put their claims in judgment, and who may, if not already done, issue execution and assert their lien on and claim to this property as against the mere alleged lien of the mortgagee, an unfiled chattel mortgage—

not the title of the mortgagee, for he had not and has not obtained title; he not having taken possession, and the property not having been delivered to him.

In the decisions of the New York Court of Appeals, whenever the court has spoken of an unfiled chattel mortgage as being good as against general creditors, it was intended that such a mortgage is good until judgment is obtained and execution issued, as until then the creditor cannot effectually assert its invalidity—that is, so long as he remains a general creditor—not that it is good and valid against such creditors, as between them and the mortgagee, after they have placed themselves in a position to assert its invalidity. If, before judgment, the mortgagor turns the property over under the mortgage, and the mortgagee takes it, this amounts to a sale and delivery in full or part satisfaction of the mortgage debt. But to make such a transaction valid as against such a judgment, the concurrence of both mortgagor and mortgagee is essential. In the case before this court, nothing of the kind was done.

If such mortgages are good as to all but judgment creditors who are such before petition filed, and become unimpeachable for nonfiling when the mortgagor, being insolvent, files a petition in bankruptcy and is adjudicated a bankrupt, it will be easy for failing debtors to prefer any creditor or creditors they please. If such a debtor gives a chattel mortgage in good faith more than four months prior to the filing of his petition, and it remains unfiled, and his other creditors are thus kept ignorant of its existence, the moment they commence actions or take steps to secure judgments and executions, so as to assert its invalidity, the debtor may file his petition in bankruptcy; and the mortgagee will take all the mortgaged property—it may be, the entire estate—because the adjudication, in effect, validates the unfiled mortgage. It is then too late for creditors to secure judgments. And this would be so even if the claims of such general creditors had accrued due but a few days before the filing of the petition—too late to allow them to secure judgments. Thus will the filing of a petition in bankruptcy, followed by adjudication, take the place of a surrender of the mortgaged property by the mortgagor in payment of the mortgage debt. The bankruptcy law was not intended to nullify the laws requiring the filing of chattel mortgages, or prevent general creditors from taking advantage of the nonfiling of chattel mortgages, and, as said, a provision was inserted to cover just such cases.

This court finds itself bound by a decision of the Circuit Court of Appeals in this circuit holding that the trustee cannot, as to judgments obtained after adjudication, assert the invalidity of an unfiled chattel mortgage, and is bound thereby. In re New York Economical Printing Co., 110 Fed. 514, 49 C. C. A. 133. It is there held:

"The chattel mortgage statute of New York (Laws 1833, p. 402, c. 279, and amendments) provides that any mortgage filed in pursuance thereof 'shall cease to be valid as against the creditors of the person making the same,' or against subsequent purchasers or mortgagees, after the expiration of one year from the filing thereof, unless, within 30 days next preceding the expiration of each and every term of 1 year after such filing a copy, together

126 F.—55

with a statement, shall be again filed. As construed by the highest court of the state, a failure to comply strictly with such requirement renders a mortgage invalid as against creditors, and no subsequent compliance can restore its validity. But it is also held that no creditor can take advantage of such noncompliance unless armed with a legal process under which the mortgaged property may be seized, or is otherwise in a position to enforce a lien upon it, and that the mortgage is good as to creditors at large as well as between the parties. Held that, where a mortgagor became a bankrupt after default by the mortgagee in failing to file a copy of the mortgage as required by the statute, the trustee could avoid the mortgage only to the extent of the claims of judgment creditors who were at the time of the adjudication in a position to enforce their claims against the property, since general creditors had at that time no perfected right to impeach the mortgage, and no right which could not have been defeated at any time by the surrender of the property to the mortgagee."

This court is of the decided opinion that there is a wide difference between "having the right" to take advantage of the nonfiling of a chattel mortgage, and "being in a position" to take advantage of such nonfiling. General creditors may have the right without being in a position to take advantage of a situation, but if, having the right, they place themselves in position to attack the instrument as against the one seeking to avail himself of it, this court is unable to see why they may not proceed according to law, and assert the invalidity of the mortgage at any time before the rights of other parties have intervened, or the mortgagee has secured some other and superior right.

Subdivisions "a" and "b" of section 67, 30 Stat. 564 [U. S. Comp. St. 1901, p. 3449], were enacted in view of the decisions in Stewart v. Platt, 101 U. S. 731, 25 L. Ed. 816, and In re Collins, 12 Blatchf. 552, Fed. Cas. No. 3,007, and this court regrets that the section is not deemed explicit enough to enable the trustee in bankruptcy to take advantage of unfiled chattel mortgages for the benefit of creditors, or, in the language of the act, for the benefit of the estate.

It should be remarked that neither Sheldon v. Wickham, 161 N. Y. 500, 55 N. E. 1045, nor Bowdish v. Page, 153 N. Y. 104, 47 N. E. 44, holds that a general assignment for the benefit of creditors extinguishes the right of those who are only general creditors at the time of the assignment to impeach a chattel mortgage for nonfiling.

The case of Sheldon v. Wickham holds that as assignees for the benefit of creditors can by statute only disaffirm and treat as void transfers in fraud of the rights of creditors, and an unfiled chattel mortgage is not, for want of filing, fraudulent as to creditors, the assignee could not defend an action to foreclose the mortgage. As the assignee had no greater right than the mortgagor, and the unfiled mortgage was valid as to the mortgagor, and between him and the mortgagee there being no pretense of fraud, he could not defend on the ground it was void as to creditors. So far as appears in the case, the rights of judgment creditors (irrespective of when judgments were obtained) were not involved. Nothing is said in the case to the effect that an assignment for the benefit of creditors extinguishes the right of general creditors to impeach the validity of a chattel mortgage for nonfiling. The question was neither directly nor indirectly involved. It is the settled law of New York that

creditors, notwithstanding an assignment for their benefit, may, if they do not make themselves parties to it by proving their claims, or otherwise, proceed against the assignor. They may reduce their claims to judgment and issue execution, but they cannot take the property from the assignee so far as he holds it for creditors. They may attack and impeach any alleged lien created or attempted to be created by the assignor. If having obtained judgment and execution, which would be a lien but for the assignment, they may, as against a lienor whose alleged lien is void as to them, take the property transferred or attempted to be transferred by the assignor. It may be that they will be compelled to bring suit in equity to establish their rights as against the alleged lienor, but this goes to the remedy, not the right. A debtor may make a general assignment for the benefit of his creditors, but he cannot by so doing cut off or destroy the rights of any creditor as against alleged lienors. Nor does such an assignment validate an unfiled mortgage as between creditor and mortgagee. It may well be that the assignee cannot raise the question for the benefit of a particular creditor as against an alleged lienor, as he simply represents the assignor, except as given certain rights of action by statute, but this want of power in the assignee does not in any degree militate against the rights of creditors to pursue remedies the law gives them against alleged lienors whose claims are invalid as to them.

In Re Economical Printing Co., 110 Fed. 518, 49 C. C. A. 133, the learned court also cites Bowdish v. Page, 153 N. Y. 104, 47 N. E. 44, as authority that an assignment for the benefit of creditors would extinguish the right of creditors to impeach a chattel mortgage for nonfiling. This court cannot discover such a suggestion in the case, or in any case. In Bowdish v. Page et al., supra, Isaac Allison, for a good consideration, on the 1st day of October, 1883, executed and delivered to M. & L. Allison a chattel mortgage. July 21, 1884, M. & L. Allison made a general assignment for the benefit of their creditors to the plaintiff, Bowdish. It does not appear that the mortgage was or was not filed. That point was not involved. July 23, 1884, Isaac Allison, the mortgagor, turned over the mortgaged property to the assignee, Bowdish, and surrendered his interest therein. The mortgagee had not taken possession. April 30, 1884, the Citizens' National Bank of Hornellsville recovered a judgment against said Isaac Allison, on which execution issued July 29, 1884, five days after he had turned the property over to the assignee of the mortgagee. August 1, 1884, the sheriff took the property from the assignee of the mortgagee, and sold same March 21, 1885. The bank became the purchaser. The assignee, Bowdish, sued for conversion of the property. The action was tried before a referee, who found that the mortgage, although made in good faith, had become void through the conduct of the parties with respect to the property so mortgaged. It was after that that the mortgagor turned over the property to the assignee of the mortgagee. This was, in effect, a sale and transfer by the mortgagor to the mortgagee of the property in part or whole satisfaction of the mortgage debt; and this was done before the bank issued execution or made a levy, thereby obtaining a

lien on the property. The court, speaking of the transfer from the mortgagor to the assignee of the mortgagee, said:

"It would at least show that there was a transfer to secure the payment of Isaac's [the mortgagor's] debt, if not in satisfaction thereof, and that would vest sufficient title and possession in the plaintiff. At that time the bank had acquired no lien, no execution having issued upon its judgment theretofore entered until at a date subsequent to the plaintiff's acquisition of title."

The court said:

"That case [referring to Stephens v. Perrine, 143 N. Y. 476, 39 N. E. 11] and Karst v. Gane, 136 N. Y. 316 [32 N. E. 1073], Tremaine v. Mortimer, 128 N. Y. 1 [27 N. E. 1060], and Mandeville v. Avery, 124 N. Y. 376 [26 N. E. 951, 21 Am. St. Rep. 678], held this doctrine—that, while the mortgagee cannot enforce a void chattel mortgage against the creditors of the mortgagor, yet, if the mortgagor treats it as void, and, before the creditors obtain a lien, transfers the property to the mortgagee in payment of a debt, that the transaction will hold. We therefore hold that, within our decisions, the plaintiff [the assignee for the benefit of creditors] occupied the vantage ground of a right to the possession of these goods, derived directly through Isaac's delivery to him, and any question of a title made defective through the void chattel mortgage was removed."

It will be noted that the judgment was against the mortgagor, Isaac Allison, who actually sold and delivered the property to the assignee of the mortgagee (equivalent to a sale and delivery to the mortgagee, M. & L. Allison), for a good consideration, before the bank obtained a lien by execution. There is no possible suggestion that the assignment by M. & L. Allison to the plaintiff for the benefit of creditors in any way affected the rights of the bank to pursue and take the property. The assignment for the benefit of creditors was not made by the mortgagor, but by the mortgagee; and the judgment was not against the assignor, but the debtor of the assignor. Again, the assignee did not claim under the mortgage, but under a sale and delivery. The case does not remotely affect the question here, which 'is, can the judgment creditor of a bankrupt, who obtains judgment after adjudication, assert, as against a mortgagee who holds a mortgage on property in the possession of the trustee of the mortgagor, and which property was never surrendered, delivered to, or taken possession of by, the mortgagee, the invalidity of such mortgage as to himself, when the mortgagee asserts a claim to the property or its proceeds under and through the alleged void mortgage, and against such judgment creditor?

In this connection it may well be to call attention to In re Pekin Plow Co., 112 Fed. 308, 50 C. C. A. 257, which case cannot be well reconciled with In re Economical Printing Co., supra, and also to In re Rodgers, 125 Fed. 169, where the Circuit Court of Appeals, at page 180, said:

"We are therefore brought to the question whether, under the bankruptcy law, the trustee takes solely in the right of the bankrupt, or whether he also represents the rights which creditors have, and the authority to enforce them; whether the petition in bankruptcy is merely the appropriation by the bankrupt of his property to his creditors, or an assertion in behalf of creditors of rights which they had independently of the bankrupt, and which he himself could not assert. Notwithstanding some loose expressions in the decisions upon this subject, we are satisfied, from a careful scrutiny of the act, that the filing of the petition is something more than the dedication by the bank-

rupt of his property to the payment of his debts; that the trustee is not only invested with the title of the property, but since, after the filing of the petition, the creditors are powerless to pursue and enforce their rights, the trustee is vested with their rights of action with respect to all property of the bankrupt transferred by him or incumbered by him in fraud of his creditors, and may assail, in behalf of the creditors, all such transfers and incumbrances to the same extent that creditors could have done, had no petition been filed. The filing of the petition, followed by seizure and by adjudication in bankruptcy, is a seizure of the property by the law for the benefit of creditors, and an appropriation of it to the payment of the debts of the bankrupt. It is a seizure of the property by legal process, equal in rank to, and of the same force and effect as by, execution or attachment. This has been held by various courts of appeals, in which decisions we fully concur. In re Pekin Plow Company, 50 C. C. A. 257, 112 Fed. 308; In re Garcewich, 53 C. C. A. 510, 115 Fed. 87. It is said by the Supreme Court in Mueller v. Nugent, 184 U. S. 1, 14, 22 Sup. Ct. 275, 46 L. Ed. 405: 'It is as true of the present law as it was of that of 1867 that the filing of the petition is a caveat to all the world, and in fact an attachment and injunction.' We have assumed that the bank and H. W. Rogers & Bro. are bona fide holders for value, and without notice, of these warehouse receipts, giving therefor a full consideration. As against the bankrupt, they would be entitled to protection, and would be held to have the title to the property; but, the issue of these warrants being constructively fraudulent as to creditors of the bankrupt, their right must be held subject to the claims of the creditors. These warrants are not commercial paper, and are not protected by the law governing that class of instruments."

In Skilton v. Codington, 86 App. Div. 166, 83 N. Y. Supp. 351, the court adopts the views expressed in Matter of Economical Printing Co., supra, but such expression was not necessary to the decision of that case, as it did not appear there was any judgment creditor. But in that case McLennan and Williams, JJ., dissented. In that case the prevailing opinion in discussing the meaning of subdivision "b" of section 67 of the bankruptcy act (Act July 1, 1898, c. 541, 30 Stat. 564 [U. S. Comp. St. 1901, p. 3449]), which says that whenever a creditor is "prevented from enforcing his rights as against a lien created, or attempted to be created, by his debtor, who afterwards becomes a bankrupt, the trustee of the estate of such bankrupt shall be subrogated to and may enforce such rights of such creditor for the benefit of the estate," states, "We think it more just to construe the provisions of said act already referred to as meaning, so far as such an action as this is concerned, creditors who had secured some specific claim against, or lien upon, the property involved by the bankruptcy." As the act provides that the claim of such a creditor shall be enforced by the trustee for the benefit of the estate, this construction will take the benefit of a lien obtained by a judgment creditor, good as against the mortgagee, but which takes nothing from the estate of the bankrupt, and which is not void as against the mortgagee even if obtained within four months of bankruptcy, from the creditor who has obtained such a lien by judgment and execution, and confer it upon the estate for the benefit of all creditors. Such an arbitrary confiscation of property rights was not intended, and no such construction of the act should prevail. It must be remembered that in the case of an unfiled chattel mortgage the mortgage is good against the mortgagor and his estate (unless the trustee may take advantage of it), and valid in the hands of the mortgagee or his assignee as between him and the estate held by the trustee (if the

trustee only takes the rights and remedies of the bankrupt mortgagor), and hence the judgment creditor, with a judgment and execution at the date of bankruptcy, would take nothing the estate of the bankrupt (the trustee) could hold, but only the property the mortgagee would otherwise take from the estate (under his unfiled mortgage); hence, if we give a construction to the section quoted that will transfer the right to enforce such a lien as against the mortgagee from the judgment creditor, with a lien perfected at the date of bankruptcy to the estate, we deprive the judgment creditor of his lien which he has obtained, and which is good against the mortgagee, and takes nothing from the estate, and transfer it and its proceeds to all the creditors. No greater injustice could be perpetrated, and no such result was intended. It was the intention of Congress, as an additional incentive to mortgagees to file their mortgages, to prevent creditors with secret liens of that character from taking and holding all (it might be, as in this case) the personal estate of a bankrupt as against general creditors by means of such secret liens, by transferring to and vesting in the trustee, when appointed, the right to take advantage of such nonfiling for the benefit of all creditors, thus promoting the general policy of the law that "equality is equity," and preventing the swallowing up of estates by means of secret liens more than four months old.

But assume as settled that the trustee in bankruptcy cannot question this chattel mortgage in behalf of those judgment creditors whose judgments were obtained after the adjudication. Such a holding does not settle the title to the money in controversy here, the proceeds of the sale of the mortgaged property. The trustee took this property, and holds the proceeds subject to all the rights of creditors, judgment creditors then having judgments, and then general creditors who have since obtained judgments, mortgagees, and attachment creditors; and it is the duty of the court to see that they are properly represented and heard, if they desire to be heard. If the then general creditors, who since the adjudication have obtained judgments, have the right in an appropriate proceeding to question the validity of the mortgage held by Wever, and under which he claims, they have the right to be heard in this court as to the disposition of the money now in the hands of the trustee, and derived from the sale of the mortgaged property. So far as appears, they have not been made parties to this proceeding. It seems to have been assumed that the trustee represents all creditors, and may assert all their rights, and that his action binds all. This court thinks otherwise. The Circuit Court of Appeals having held (In re Economical Printing Co., supra) that the trustee cannot question the validity of the mortgage given by Orlando to Fletcher S. Beede, for nonfiling, but it being the law of the state of New York, as determined by its Court of Appeals, that general creditors may impeach its validity for nonfiling, as against the mortgagee, at any time when they obtain judgment and execution, if done before the mortgagor has transferred and delivered the property to a bona fide purchaser for value, or to the mortgagee in payment of the mortgage debt, in whole or in part, and as several of these creditors have placed themselves in a position to question the

mortgage and assert its invalidity as to them, as between them and the mortgagee, and his assignee, Wever, and as there is nothing in the bankruptcy law that prevents or defeats their right to question the right of Wever to receive the proceeds of the property mortgaged and claimed by him, this court holds that these judgment creditors must be brought into this proceeding in this court; that they must have their day in court.

The court therefore declines to now hold that Wever is entitled to any part of the proceeds of the sale made by the trustee, and declines to make any order or pronounce any judgment for the disposition of such proceeds until such judgment creditors and all judgment creditors are brought in and have been heard. It may be that an action will be necessary to fully determine the question, but this court only makes the suggestion. If all parties consent, this court can determine all questions in this proceeding; but it is certain that these judgment creditors have not yet consented to a determination of their rights on this hearing, and on the incomplete evidence before the court. All creditors, whether with or without liens, are or should be made parties to the bankruptcy proceedings, and to every controversy affecting their rights in property found in the possession of the bankrupt, and passing to the trustee.

The order of the court is that an order be served on all judgment creditors, requiring them to show cause why an order and judgment of this court should not be made and entered directing the trustee in bankruptcy to pay over to John M. Wever, the assignee of the chattel mortgage in question, $7,500 of the proceeds of the sale of the mortgaged property, at and before this court, at a term thereof to be held at Albany, N. Y., commencing February 9, 1904. Such order to show cause will also require John M. Wever to show cause at such time and place why said judgments should not be paid from the proceeds of such sale of said property.